Filed 9/17/14  Sievers v. Hill CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MARISA SIEVERS, | C073413 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV-0030233) |
| v. | |
| VIOLET HILL, | |
| Defendant and Respondent. | |

Defendant Violet Hill injured plaintiff Marisa Sievers in a car accident.  The jury awarded Sievers $2,175.27 in medical damages, but no general damages for pain and suffering.  Sievers appeals from the judgment and the order denying her motion for a new trial.  She contends the verdict is inadequate as a matter of law; it was error not to dismiss Juror No. 2; and it was error to allow Hill to testify that she was not injured in the accident.  As we will explain, we find no prejudicial error and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

*The Accident*

Both Sievers and Hill were students at Whitney High School. The accident occurred on May 20, 2009, just after school was let out for the day. Sievers was in the back seat of a Jeep Liberty driven by student Holly Martinelli. Hill was driving her mother's Camry. Hill stopped behind the Jeep at a stoplight. She leaned over, either to grab something or to put something in her backpack. Out of the corner of her eye she saw something green; thinking it was the light, she took her foot off the brake and may have pressed the accelerator. She ran into the Jeep and slammed on the brakes. The impact was abrupt and loud, but her air bag did not deploy. The cars pulled onto a side street.

Both cars were damaged. The spare tire on the back of the Jeep hit the grill and hood of the Camry, breaking the grill and buckling the hood. The bumpers of the two cars made contact. The Camry sustained $5,900 in damage, more than its value. The Jeep had $2,900 in damage.

Martinelli went up to Hill and asked if she was all right, and Hill asked her the same. Both said yes. Sievers called her mother to come get her. She told her mother that her back was hurting and she wanted to see the doctor.

*Treatment*

Sievers went directly to the doctor. She presented with tenderness in her mid to lower spine and the doctor diagnosed a spinal strain. He prescribed a muscle relaxer, alternating heat and ice, and stretching. Sievers, a year-round soccer player, was already on sports restriction due to a concussion she had suffered a week earlier.[1] The doctor extended the restriction one week. Sievers did not miss any school.

---

[1] Sievers had played soccer since she was four years old. She began with recreational soccer and progressed to a select team and then a competitive team. She played all

2

She returned to the doctor about a week later.  She was feeling better and not using the medication; she took the muscle relaxer for only one day.  The doctor prescribed back strengthening exercises and ice.  On June 9, Sievers saw a nurse practitioner and said she still had back pain.  They discussed the use of heat and exercises and considered physical therapy if she did not recover soon.

Sievers saw the nurse practitioner again in August.  She had the full range of motion in her back and no SI joint or sciatic pain.  She did have generalized muscle tension.  The nurse ordered an X-ray, which came back normal.  She referred Sievers to physical therapy.

In early October 2009, Sievers saw the doctor for insomnia.  He examined her spine and found no visible or palpable muscle spasms.  She had a good range of motion.  The doctor performed a thorough physical examination and a neurological examination.  Sievers had no pain or tenderness in her lower back; this visit was not a follow-up to the accident.

The doctor had ordered physical therapy for twice a week for eight weeks after the August visit to the nurse practitioner.  Sievers responded well and did not complain to the therapist that the exercises hurt.  She continued to play soccer.  She reported a flare-up of back pain after a vigorous soccer practice on October 27, 2009.  The physical therapist could not say whether this flare-up was due to the accident or a new injury.  Sievers stopped going regularly to physical therapy.  She went once in October, twice in November, and once in December.  She was not discharged, but simply dropped out.

*Subsequent Treatment*

Sievers saw her doctor in March 2010 for a problem with her hands; she did not complain about her back.  In May, the doctor saw her for fatigue, hand problems, and a

summer and fall of 2009.  In early 2010, she played on her high school team and was named MVP and All-League.  When the season ended, she played competitive soccer with trips to North Carolina and Florida.  In early 2011, she returned to school soccer.

cough. In June, she had coughing paroxysms, which can cause back pain. On this visit, Sievers told the doctor she still had back pain from the accident. He examined her back; her spine was straight and relaxed, with no spasms, but some tenderness. A neurological exam was negative. He referred Sievers again to physical therapy for core strengthening exercises. Sievers attended physical therapy through early September. At her last session, she reported pain of one out of 10 while at rest, and three out of 10 with activity. She had pain for 30 to 45 minutes after a soccer game.

In October 2010, Sievers saw her doctor for abdominal pain, caused by a disorder of the cartilage of the ribs. In January 2011, she went to the doctor for an eye infection, with no complaint of back pain. On January 27, 2011, she underwent a sports physical. A full examination revealed no active medical problems and the doctor cleared her to play soccer.

Sievers's mother learned about a chiropractor from a friend. She signed a lien agreement, under which the chiropractor would be paid from the judgment or settlement in the contemplated lawsuit. Sievers told the chiropractor she was hit by a car going 45 miles per hour. The chiropractor found back pain and a significant finding in the neck region. He suggested three treatments a week at first, and then saw Sievers less frequently until he released her from treatment on June 27, 2011. Sievers's pain had subsided and she felt "normal."

*The Lawsuit*

Sievers sued Hill for negligence. The parties stipulated that Sievers's medical expenses were $1,045.93 for Sutter Medical Group, $3,493.60 for physical therapy, and $2,070 for chiropractic.

At trial, Sievers and her mother claimed Sievers had been in constant pain from the accident until she saw the chiropractor. She had to take ibuprofen if she was on her feet for an hour or more. The physical therapy did not help and the exercises were painful.

4

The defense presented an accident reconstructionist who estimated the Camry's speed on impact as eight to 10 miles per hour. He testified the force of the collision was 1.1 to 1.4 Gs, about the same as hitting a curb in a parking lot and less than that in an amusement park ride.[2]

An orthopedic surgeon testified Sievers sustained a thoracolumbar sprain/strain in the accident, with no structural injury. Based on the medical records, he opined that she improved over the next three to five months and was pain free in October 2009. He explained that her need for subsequent treatment could have been caused by a new precipitator of back pain, the intense soccer practice on October 27, 2009. He believed there should have been an investigation as to the cause of this new back pain, but it was not related to the accident. He also indicated there were congenital conditions causing back problems that surface in this age group.

In closing argument, Sievers asked for all her medical expenses and damages for pain and suffering of $40,000 to $60,000. In determining the amount of damages for pain and suffering, counsel told the jury to consider the severity of the injury, its duration, and how it interfered with Sievers's life.

The defense argued that by October 8, 2009, Sievers was pain free. Her medical bills to that date were $2,175.27. Counsel argued the case was a "little whiplash case worth a couple of thousand dollars."

The jury returned a verdict of $2,175.27 for medical expenses and no damages for pain and suffering.

Sievers moved for a new trial, claiming inadequate damages and prejudice from the failure to remove a certain juror. The trial court denied the motion.

---

[2] Sievers testified she had been to Disney World, Disneyland, and Six Flags since the accident.

5

# DISCUSSION

## I

### *Inadequate Damages*

Sievers contends the trial court erred in denying her motion for a new trial on the basis of inadequate damages. She contends the verdict is inadequate as a matter of law because she was awarded special damages for her medical expenses but no general damages for her pain and suffering. She contends the jury was improperly influenced by the fact that she continued to play soccer after the accident.

A. *The Law*

" 'Code of Civil Procedure section 657 states: "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal. [Citation.] An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] Accordingly, we can reverse the denial of a new trial motion based on insufficiency of the evidence or [inadequate or] excessive damages only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted.' [Citation.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415–1416.)

"Under section 3333, Civil Code, plaintiff is entitled to damages which will compensate him for all detriment proximately caused by defendant's tortious acts; and under section 3359 damages must, in all cases, be reasonable. There are few cases in which appellate courts have found damages to be inadequate as a matter of law. An

6

award for the exact amount of, or even less than, the medical expenses is not necessarily inadequate as a matter of law, because in the majority of cases there is conflict on a variety of factual issues—whether plaintiff received any substantial injury or suffered any substantial pain, or whether the medical treatment was actually given or given as a result of the injuries, or reasonable or necessary. [Citation.]" (*Haskins v. Holmes* (1967) 252 Cal.App.2d 580, 586 (*Haskins*).)

"An appellate court will not set aside a judgment for no more than actual medical expenses unless the trial court abused its discretion. [Citation.] If the evidence clearly indicates that plaintiff suffered serious pain, inconvenience, or mental suffering, a verdict for medical expenses alone might be inadequate as a matter of law. [Citation.] However, an award for the exact amount of, or even less than, the medical expenses is not necessarily inadequate if there is a conflict as to whether the plaintiff suffered any substantial injury or pain. [Citations.]" (*Randles v. Lowry* (1970) 4 Cal.App.3d 68, 73 - 74.) A jury may properly return a verdict for an amount less than or equal to medical expenses in cases where, " 'even though liability be established, a jury may conclude that medical expenses paid were not occasioned by the fault of the defendants.' [Citation.]" (*Dodson v. J. Pacific, Inc*. (2007) 154 Cal.App.4th 931, 937, fn. omitted (*Dodson*).)

B. *Analysis*

Here, the jury awarded Sievers less than the stipulated amount of her medical expenses. However, there was evidence to support the jury's implied finding that all of the stipulated medical expenses were not caused by Hill. The orthopedic surgeon testifying for the defense opined that Sievers's medical expenses incurred after October 8, 2009, were not related to the accident, but to the separate injury caused by the vigorous soccer practice at the end of October or to a congenital condition that caused back problems.

Despite the testimony of Sievers and her mother about her constant pain, there was evidence from which the jury could reasonably conclude that Sievers suffered only

7

minimal pain and suffering from the injury caused by the accident. She testified she used the prescribed muscle relaxer for only one day. She was anxious to return to playing soccer and played soccer continuously from one week after the accident. She did not complain of additional pain to her doctor until over a year after the accident. The conflicting evidence in this case distinguishes it from cases where it was *undisputed* that plaintiff was subjected to surgery and hospitalization, and therefore indisputably suffered substantial pain, so that a judgment that failed to award general damages was inadequate as a matter of law. (E.g., *Dodson, supra,* 154 Cal.App.4th at p. 938 [surgery to remove herniated disk and replace it with metallic plate]; *Gallentine v. Richardson* (1967) 248 Cal.App.2d 152, 153 [surgery and three days hospitalization for gunshot wound].)

Sievers contends the evidence did show she suffered a serious injury, and therefore suffered substantial pain, because her doctor diagnosed muscle spasms the day of the accident and the nurse practitioner noted them in June 2009. She produced no evidence, however, that a muscle spasm invariably indicates a serious injury. She relies on *Whyatt v. Kukura* (1958) 157 Cal.App.2d 803, where a doctor "testified that muscle spasm was an objective finding usually present in a case of serious injury to the neck or back." (*Id*. at p. 805.) Even if we were to consider that testimony in this case, it does not establish that the presence of a muscle spasm conclusively signals a serious injury.

Because there was conflicting evidence as to whether "plaintiff received any substantial injury or suffered any substantial pain," the damage award was not inadequate as a matter of law. (*Haskins, supra,* 252 Cal.App.2d at p. 586.) The jury may have believed Sievers suffered only minimal injuries and she was fairly compensated by receiving some of her medical expenses. " 'We must not mislay the jury's inherent right to pass upon the credibility of the evidence and the witnesses.' " (*Miller v. San Diego Gas & Electric. Co.* (1963) 212 Cal.App.2d 555, 559.)

8

## II

### *Failure to Remove Juror No. 2*

Sievers contends the trial court erred in failing to remove Juror No. 2 once it was discovered that Juror No. 2's husband was friends with an attorney in the same firm as defense trial counsel. Recognizing that while "this is not her strongest argument," Sievers argues "it nonetheless sheds additional light on perhaps why the jury ruled the way it did." We find no error.

### A. *Background*

After the jury was sworn, Juror No. 2 indicated that she knew one of the attorneys in the law firm representing Hill. She recognized him when he appeared in the courtroom during opening statements. That attorney was a friend of her husband; they went to sporting events together every few months. Her husband and the attorney also conferred on building ukuleles. She had met the attorney three times, once at a holiday party at her house. Juror No. 2 said remaining on the jury would not create an awkward situation for her and she did not think it would influence her decision.

The trial court found Sievers failed to establish actual bias and denied her challenge to Juror No. 2.

### B. *Law and Analysis*

After the trial begins, the court may substitute a juror with an alternate if good cause is shown and discovering a ground for disqualification during trial may be good cause. (Code Civ. Proc., § 233.)[3] A trial court's decision whether to remove a juror is reviewed for an abuse of discretion. (*People v. Marshall* (1996) 13 Cal.4th 799, 843.)

Section 229 sets forth the exclusive circumstances in which a challenge for implied bias may be taken. Among these circumstances are where the juror has

---

[3] Further undesignated statutory references are to the Code of Civil Procedure.

consanguinity or affinity within the fourth degree to any party (*id.,* subd. (a)) or an attorney-client relationship with a party or a party's attorney. (*Id.*, subd. (b).) The friendship between a juror's husband and an associate in the law firm representing one party does not establish implied bias and thus cause for removal. (§ 229; cf. *People v. Earnest* (1975) 53 Cal.App.3d 734, 750 [juror not subject to challenge for cause even though he knew members of victim's family].) When the juror consistently affirms his willingness and ability to act impartially in weighing the evidence and applying the law upon which he will be instructed, there must be facts which clearly show the juror's bias to warrant a reversal of the trial judge's decision. (*West Coast Sec. Co. v. Kilbourn* (1930) 110 Cal.App. 293, 296-297.)

Here, Sievers does not contend that Juror No. 2 was actually biased. Instead, she relies on implied bias and argues the relationship at issue is "a hybrid relationship" similar to proscribed consanguinity/affinity or attorney-client relationship. We disagree. Sievers fails to set forth any facts to show bias on the part of Juror No. 2. The attenuated relationship at issue does not fall within the statutory grounds for a challenge for implied bias under section 229. The trial court did not abuse its discretion in declining to excuse Juror No. 2 for bias.

## III

### *Hill's Testimony on Her Lack of Injury*

Sievers contends the trial court erred in admitting, over objection, Hill's testimony that she was not injured in the accident. After Hill responded "no" to the defense question asking if she was hurt, Sievers objected, "relevant (*sic*) and move to strike." The trial court overruled the objection. Sievers contends this evidence was irrelevant and unduly prejudicial because it suggested that if Hill was not hurt, Sievers was malingering to claim an injury lasting nearly two years.

10

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1414.)

Not every error in admitting evidence is reversible. Under article 6, section 13, of the California Constitution, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In keeping with this constitutional provision, the Evidence Code precludes setting aside a verdict or finding or reversing a judgment based thereon, because of the erroneous admission of evidence unless the error complained of has resulted in a miscarriage of justice. (Evid. Code, § 353.)

Even if we were to find the admission of Hill's testimony was error, there was no prejudice. Hill testified, without objection, that after the accident, she and Martinelli asked if the other was hurt and each said no. Thus, evidence that neither Hill nor Martinelli was hurt in the accident was already before the jury. There was no comment in closing argument about the lack of injury to Hill or others, and nothing in the record indicates Hill's testimony emphasized this evidence. As set forth *ante*, there was considerable evidence as to the limited nature of Sievers's injury. Sievers has failed to show how admission of this additional evidence prejudiced her.[4]

---

[4] In her reply brief, Sievers contends Hill's accident reconstructionist should not have been allowed to testify about the amount of force in the accident without interpretation by a biomechanical engineer. We will not consider arguments raised for the first time in a reply brief. (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 268.)

11

## DISPOSITION

The judgment is affirmed.  Hill shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

        DUARTE        , J.

We concur:

    NICHOLSON    , Acting P. J.

     MURRAY      , J.

12