Filed 4/9/26  Torres v. Rivera CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| DANIEL TORRES et al., | |
| Plaintiffs and Appellants, | G064618 |
| v. | (Super. Ct. No. 30-2021-01214322) |
| KAILA JEAN REYES RIVERA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Affirmed.

The Blackman Law Firm and April R. Blackman for Plaintiffs and Appellants.

James T. Shott & Associates, Matthew L. Stein, Kenneth Holdren and Kathryn V. Dao for Defendants and Respondents.

Dissatisfied with the amount of damages awarded to them by the jury in this personal injury case, plaintiffs Daniel Torres and Sergio Gonzalez appeal the judgment and the trial court's postjudgment orders denying their motions for judgment notwithstanding the verdict (JNOV) and a new trial. Plaintiffs contend the damages were inadequate and unsupported by substantial evidence and that there was jury misconduct and other irregularities in the proceedings below. Finding no error, we affirm the judgment and postjudgment orders.

FACTS AND PROCEDURAL HISTORY

Defendant Kaila Jean Reyes Rivera (Kaila) was driving a car with the permission of its owner, defendant Rosario Castillo Reyes Rivera, when she ran a red light and collided with a car in which Torres and Gonzalez were riding. Defendants stipulated to liability, leaving only causation and damages to be decided by the jury.

At trial, plaintiffs introduced evidence, including expert testimony, that Torres and Gonzalez, both in their 20's, had suffered injuries as a result of the accident—Torres to his knee and Gonzalez to his back. In closing argument, plaintiffs' counsel asked the jury to award damages to plaintiffs totaling approximately $10 million. Defendants called several expert witnesses to testify, who disputed that plaintiffs had suffered injuries as a result of the accident, the extent of those alleged injuries, and plaintiffs' claimed damages. Among other things, defendants introduced evidence that both vehicles were moving at a slow rate of speed at the time of the collision, the airbags in plaintiffs' vehicle did not deploy, plaintiffs did not seek medical treatment the day of the accident, and it was unlikely anyone involved in a

2

similar impact would have reported an injury.[1] Defendants' medical experts opined the collision either had no effect on plaintiffs or the effect was limited to a sprain or strain that fully resolved within a few months after the collision, and any pain and injuries plaintiffs suffered after that point were related to their obesity and degenerative conditions unrelated to the accident.

The jury unanimously found Kaila's negligence was a substantial factor in causing harm to plaintiffs and awarded the following damages: Torres was awarded $16,400 in damages, consisting of $6,400 for past medical expenses and $10,000 for past noneconomic loss; Gonzalez was awarded $12,500, which included $5,000 for past medical expenses and $7,500 for past noneconomic loss.[2] The jury did not award either plaintiff damages for future noneconomic losses.

The trial court entered judgment on June 20, 2024, and defendants served notice of entry of judgment on June 26, 2024. On July 10, 2024, plaintiffs filed motions for JNOV and a new trial. The court denied both motions and plaintiffs appealed.

---

[1] Torres pushed Kaila's car out of the street and into a parking lot following the collision.

[2] The verdict form described the general damages, i.e., past noneconomic losses, as "[p]hysical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress."

## DISCUSSION

### I.

### THE JNOV RULING

Plaintiffs contend the jury's minimal damages award was not supported by the evidence and substantial evidence supported plaintiffs' claimed damages. We disagree.

Generally, the standard of review on a motion for JNOV is "'whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.'" (*I.C. v. Compton Unified School Dist.* (2025) 108 Cal.App.5th 688, 698.) In cases like this, however, where plaintiffs failed to meet their burden of proof as to particular facts, they face an "extremely high burden on appeal" and "'"it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment."'" (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.) Rather, "'"the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*."'" (*Ibid*.) In conducting this review, "we 'must resolve all conflicts in favor of the prevailing party and must draw all reasonable inferences in support of the trial court's judgment.'" (*Ibid*.)

"'Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" [Citation.] This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing plaintiff to meet, because unless the trier of fact made specific factual findings in favor of the losing plaintiff, we presume the trier of fact concluded that 'plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof.'" (*Estes v. Eaton Corp., supra,* 51 Cal.App.5th at p. 651.)

4

"'The amount of [noneconomic] damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial.'" (*Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 527; see Code Civ. Proc., § 657 [a "new trial shall not be granted upon the ground of . . . excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the . . . jury clearly should have reached a different verdict or decision"].)

Plaintiffs have failed to show the evidence compelled a higher damages award in their favor. First, plaintiffs' evidence of causation and damages was not uncontradicted.[3] For instance, one defense medical expert testified, among other things, that Torres did not sustain any objective injury to the knee, neck, or lower back as a result of the subject accident, and that his knee complaints were due to his morbid obesity and inflammation within the meniscus. Another defense medical expert testified he examined both plaintiffs and disagreed with their experts regarding their injuries from the subject accident and medically necessary treatment. Defendants also point to evidence that called plaintiffs' credibility into question, including evidence that Torres did not seek medical treatment for his alleged injuries until more than six weeks after the accident, and only then after he was referred to a chiropractor by his attorney. Gonzalez's primary care physician, who he saw

---

[3] Even if the testimony of plaintiffs' experts had been uncontroverted, the jury was entitled to reject any part—or all—of it. (See CACI No. 219 ["You do not have to accept an expert's opinion. . . . You may believe all, part, or none of an expert's testimony"]; see also *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 ["[T]he jury is not required to believe the testimony of any witness, even if uncontradicted"; we presume on appeal the jury found disputed issues of fact in favor of the prevailing party].)

the day after the accident complaining of pain, did not perform or recommend X-rays or MRIs or any chiropractic treatment or physical therapy. Gonzalez did not seek treatment again until six weeks after the accident, when he, too, was referred to a chiropractor by his attorney. There was evidence from which jurors could reasonably infer that plaintiffs' injuries were not as severe as they claimed, that their injuries from the accident had completely resolved within months of the accident, that treatment after that point was not medically necessary, and that any ongoing issues they were experiencing were due to degenerative conditions and obesity.

As the trial court stated in its order denying the JNOV motion: "The jury weighed the credibility of the various sources of conflicting evidence regarding the cause of Plaintiffs' alleged injuries and the extent of Plaintiffs' alleged damages and rendered their verdict on that basis. The trial court will not second guess the jury's findings based on Plaintiffs' preferred interpretation of the evidence put forth at trial." We find no error in this conclusion.

Second, plaintiffs failed to set forth in their opening brief on appeal, with citations to the record, the evidence *from both sides* regarding causation and damages, instead opting to highlight only evidence that supported plaintiffs' view of the case. "When the appellant attacks the judgment on the ground that the evidence is insufficient to support the verdict, the appellant is required to set forth in its brief all the material evidence on the subject and not merely evidence which it believes supports its contention, or the claim of error will be deemed to be waived." (*Sprague v. Equifax, Inc., supra*, 166 Cal.App.3d at pp. 1027–1028.)

Finally, plaintiffs' reliance on *Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, and similar cases that held jury awards that fail to include

6

any compensation for pain and suffering are inadequate as a matter of law, is misplaced. The jury here did not award *zero* damages to plaintiffs for pain and suffering. They just did not award the amounts plaintiffs requested. (See *id*. at p. 938 ["the extent of the plaintiff's pain and suffering is for the jury to decide"].)

II.

MOTION FOR NEW TRIAL

Plaintiffs contend the trial court erred in denying their motion for new trial, which was based on Code of Civil Procedure sections 657(1) (irregularity in the proceedings), 657(2) (juror misconduct), 657(5) (inadequate damages), 657(6) (insufficiency of the evidence to support the verdict), and 657(7) (error in law).[4] We do not "disturb the trial court's ruling on a motion for new trial unless the record reveals a manifest and unmistakable abuse of discretion." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 200.) Plaintiffs have failed to show the court abused its discretion in denying the motion.

A. *Juror Misconduct*

Plaintiffs contend they have demonstrated misconduct on the part of the jury. When a party moves for a new trial based on juror misconduct, the court considers three factors: First, whether the evidence of claimed misconduct is admissible; second, whether the facts establish misconduct; and third, whether the misconduct was prejudicial. (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160.) "'[A] trial court has

---

[4] "An order denying a motion for a new trial is not appealable; however, it is reviewable on appeal from the underlying judgment." (*Audish v. Macias* (2024) 102 Cal.App.5th 740, 746, fn. 2.)

broad discretion in ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion.'" (*Ibid*.)

Plaintiffs rely on a single declaration from the presiding juror. According to that declaration, one juror asked what a lien was, and another juror explained it was "getting medical treatment without paying up front." Other jurors purportedly speculated why plaintiffs did not use health insurance; suggested plaintiffs may have been misguided by their lawyers, who were authorizing medical visits rather than suggesting plaintiffs obtain treatment covered by health insurance; made comments to the effect that if plaintiffs did have health insurance, they would have gone to their primary doctor instead of being sent to a chiropractor; and discussed whether plaintiffs' doctors were in it just for money. The presiding juror's declaration also discussed her and other jurors' assessment of the parties' experts, why she thought plaintiffs were credible, and the process by which the jurors calculated and awarded damages. One juror purportedly mentioned that plaintiffs were not as injured as they claimed because "they did not fidget or move or stretch their legs when sitting on the hard bench outside the court room"; that same juror said they had previously "had knee surgery and it was killing [them]," and they (unlike plaintiffs) were "unable to sit still." Another juror stated he previously had back surgery and "would not have been able to sit still like the plaintiffs." Other jurors reportedly stated they had noticed the same thing while observing plaintiff during closing arguments.

We agree with the trial court's conclusion the presiding juror's declaration is largely inadmissible. Evidence Code section 1150, subdivision (a), provides that "any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the

8

verdict improperly." But "[n]o evidence is admissible to show *the effect of such statement*, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning *the mental processes* by which it was determined." (*Ibid., italics added.) Put another way, a jury's verdict may only be impeached with proof of *overt acts of misconduct*, objectively ascertainable and subject to corroboration, but not with proof of the subjective reasoning process of individual jurors. (*Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1678, disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41.) As noted by the California Supreme Court, "This rule 'serves a number of important policy goals: It excludes unreliable proof of jurors' thought processes and thereby preserves the stability of verdicts. It deters the harassment of jurors by losing counsel eager to discover defects in the jurors' attentive and deliberative mental processes. It reduces the risk of postverdict jury tampering. Finally it assures the privacy of jury deliberations by foreclosing intrusive inquiry into the sanctity of jurors' thought processes.'" (*In re Hamilton* (1999) 20 Cal.4th 273, 294, fn. 17.)

Here, the declaration mostly refers to discussions during the deliberative process or the juror's purported impressions and thought processes regarding the deliberations. It is therefore inadmissible under Evidence Code section 1150. The declaration also contains statements as to what other jurors purportedly observed and did with that information that are vague, without foundation, and speculative.

Even assuming, for the sake of argument, the declaration could properly be considered in whole or part in determining whether there was juror misconduct, it does not establish any such misconduct. Jurors may assess a party's demeanor in order to determine their credibility. (See *People*

*v. Caro* (2019) 7 Cal.5th 463, 511 ["The demeanor of a witness is 'rarely reflected in the record' [citation], but is a proper factor for the jury to consider when assessing the witness's credibility].) And jurors drawing upon their own life experiences to evaluate the evidence before them does not run afoul of the court's instructions prohibiting outside investigations and the consideration of extrinsic matters.[5] (See *People v. Wilson* (2008) 44 Cal.4th 758, 831–832 [it is not misconduct for a juror to use their own life experiences to evaluate trial evidence, and to describe their experiences to other jurors].) Indeed, ""'[j]urors cannot be expected to shed their backgrounds and experiences at the door of the deliberation room.""'" (*Id.* at p. 832.) The declaration does not show any jurors were biased against plaintiffs or somehow concealed any such bias during the voir dire process.

Further, plaintiffs failed to show anything improper arising from the jury's discussion of plaintiffs being treated on a lien basis. The facts that plaintiffs were treated on a lien basis and were referred to doctors by their attorney came out in testimony at trial and are relevant to bias and credibility. (*Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 807–808.)[6]

---

[5] The trial court instructed the jury: "Do not do any research on your own or as a group. Do not use dictionaries, the internet, or other reference materials. Do not investigate the case or conduct any experiments."

[6] We find no error in the trial court's denial of plaintiffs' motion in limine No. 1 to preclude evidence of treatment based on a lien under Evidence Code section 352. As noted, such evidence is relevant, and we find no abuse of discretion in the trial court's conclusion that the evidence was not so unduly or unfairly prejudicial as to compel its exclusion under section 352. (See *People v. Nieves* (2021) 11 Cal.5th 404, 445 ["'We review a trial court's decision to admit or exclude evidence "for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an

Plaintiff's own expert orthopedic surgeon explained to the jury what a medical lien was, i.e., a "financial tool that we allow patients to use if they don't want to pay for treatment at the time of the treatment," and testified his opinions do not change based on any financial incentive. Plaintiffs failed to show the purported discussions by one or more jurors on this topic mean the jury disregarded the court's instructions, including CACI No. 105, to only consider the evidence introduced at trial and not to consider whether any of the parties has insurance. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].) The mere fact insurance is mentioned by the jury during deliberations does not amount to misconduct. (See, e.g., *Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 349.)

*B. Plaintiffs' Other Grounds for a New Trial*

For the reasons explained above, we find no abuse of discretion— much less a "manifest and unmistakable abuse of discretion" (see *Soto v. BorgWarner Morse TEC Inc.*, *supra*, 239 Cal.App.4th at p. 200)—in the trial court's rejection of plaintiffs' other asserted grounds for a new trial, which were based on the same factual assertions we have already addressed, including that the damages awarded were inadequate, there were irregularities in the proceedings, the verdict was contrary to law, and the evidence was insufficient to support the judgment.[7] The judgment is

arbitrary, capricious, or absurd manner resulting in a miscarriage of justice"""].)

[7] Plaintiffs argue their new trial motion also should have been granted due to defense counsel's alleged misconduct in repeatedly insinuating to the jury that plaintiffs' attorney authorized medical treatment for plaintiffs to obtain unnecessary medical procedures and thereby increase the value of the case. But they failed to provide citations to the record and legal

supported by substantial evidence and plaintiffs have not shown the evidence, which was highly disputed and essentially a battle of the experts, mandated a different verdict.

## DISPOSITION

The judgment and postjudgment orders are affirmed. Respondents shall recover costs on appeal.

GOODING, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

---

authority supporting this argument and we therefore consider the argument waived. In any event, the trial court properly rejected this argument because plaintiffs failed to object to this alleged irregularity during trial. (*Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 148.)