[No. B186416. Second Dist., Div. Eight. Aug. 28, 2007.]

MAJOR DODSON, Plaintiff and Appellant, v.
J. PACIFIC, INC., et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Danny Soong and Danny Soong for Plaintiff and Appellant.

Michael A. Dolan & Associates, Michael A. Dolan, Sr., and Michael A. Dolan, Jr., for Defendants and Respondents.

**OPINION**

**BOLAND, J.—**

## SUMMARY

The jury in a personal injury case rendered a special verdict finding defendant was negligent and its negligence was a cause of injury to plaintiff.

The jury found plaintiff, who presented surgical bills as the principal item of economic damages, suffered damages caused by the accident, but suffered no noneconomic damages. The trial court denied plaintiff's motion for a new trial on noneconomic damages.

■ We hold that where a plaintiff has undergone surgery in which a herniated disc is removed and a metallic plate inserted, and the jury has expressly found that defendant's negligence was a cause of plaintiff's injury, the failure to award any damages for pain and suffering results in a damage award that is inadequate as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

Major Dodson was self-employed in the scrap metal business. He sued J. Pacific, Inc., for general negligence and premises liability in connection with an incident that occurred on December 12, 2002, while J. Pacific's employees were loading large cylindrical pieces of scrap metal onto Dodson's flatbed truck. During the loading process, a metal cylinder, weighing between 4,000 and 5,000 pounds, slipped from the prongs of the forklifts, and fell onto and rolled off Dodson's truck. Dodson, who was standing behind the truck when the cylinder slipped and began to roll, ran to avoid the rolling cylinder, tripped on pea gravel on the ground, and fell. He slid into several steel posts and struck the left side of his back and neck on the posts.

After the incident, the loading process, which took another hour and a half or so, was completed, and Dodson drove his loaded truck to his scrap metal yard and then to his home. The following day, he drove the loaded truck to Atlas Iron & Metal, where the scrap metal was unloaded.

Five days later, Dodson saw his primary physician, Dr. Tanya Arvan. Arvan's notes showed Dodson stated that he had "pain in the knees and the knees give out," but showed no other complaint. Dodson did not tell Dr. Arvan about his fall because he "didn't think it was that serious." Sometime later, he spoke to the manager at J. Pacific, telling him he thought he might need to see a doctor. The manager referred Dodson to a Superior Care facility. The facility took X-rays of Dodson's neck, arms, legs and back. Dodson received physical therapy (heat treatments) for a month or so, and was referred to another doctor. Dodson continued experiencing pain, and fell on two additional occasions, on January 7, 2003, and January 24, 2003. On the latter occasion, Dodson was taken to the hospital and came under the care

of Dr. Sasan Yadegar, a neurosurgeon. Dr. Yadegar's examination and tests revealed some degenerative disease of the neck (arthritis), a central disk rupture, compression of the spinal cord, spinal cord "signal changes" (contusion or bruising of the spinal cord), and quadriparesis (weakness in all four extremities as a result of a spinal cord injury). Dr. Yadegar recommended surgery and, on February 4, 2003, removed the herniated disk and arthritic joints and inserted a metallic plate. After the surgery, Dodson experienced a loss of equilibrium and "a lot of pain" in his arms, knees, neck and back, and used a walker for about nine months. Since then, he has used a cane. Dodson received physical therapy from June 2003 to May 2004, consisting of heat treatments and massages to the neck, back and knees.

In April 2004, Dodson filed this lawsuit. Trial began on May 12, 2005, and continued for several days. The record includes the following evidence.

—Dr. Yadegar testified his consultation notes showed that after the December 12, 2002 fall, Dodson stopped working due to weakness in his arms and legs. Dr. Yadegar opined that Dodson suffered a spinal cord injury as a result of the December 12 fall, causing weakness in the hands and legs, which led to his subsequent falls, and which were thus causally related to the December 12 fall.

—J. Pacific presented testimony from two expert witnesses, who disagreed with Dr. Yadegar. Dr. Stephen Rothman, a radiologist, testified that images of Dodson's spinal cord showed the end stage of a process of chronic irritation of the spinal cord, caused by constant rubbing, not by a single trauma. Dr. Rothman also stated that if the spinal cord had been injured on December 12, Dodson would have had instantaneous major neurological signs or symptoms. Dr. Michael Wienir, a neurologist, also opined that the disk bulges shown on Dodson's MRI scan were not caused by the December 12, 2002 fall, but showed chronic, long-standing degenerative change in the neck. Dr. Wienir stated that "if it had been an acute process on December 12th, it would have been associated with very significant neck pain," and "would not have allowed a man to continue, get up, wait around, get back in his truck, drive his truck back to the yard, work for the next two, three weeks. It just couldn't occur."

—Dodson incurred a surgical bill at the hospital of $12,101; a surgeon's bill of $1,800; a paramedic bill of $457; and physical therapy bills in excess of $10,000.

At the conclusion of the trial, the jury rendered a special verdict. It found J. Pacific was negligent, and its negligence was a cause of Dodson's injury. It further found Dodson suffered economic damages of $16,679 caused by the accident, but suffered no noneconomic damages. The jury also found Dodson was negligent, and 50 percent of the negligence causing his injury was attributable to Dodson. Judgment was entered for Dodson in the sum of $8,339.50.

Dodson filed a motion for a new trial on the issue of noneconomic damages or, in the alternative, an additur to the judgment in the amount of $150,000. The trial court denied the motion, ruling that the verdict "did not leave [Dodson] with an inadequate recovery on a fair consideration of the evidence"; no facts suggested passion, prejudice or corruption on the part of the jury; and Dodson "had a fair trial, and the jury awarded an ample sum in consideration of the entire record."[1]

Dodson filed a timely appeal.

## DISCUSSION

Dodson argues that the jury award failing to compensate him for pain and suffering was inadequate as a matter of law, and the trial court abused its discretion in denying his motion for a new trial on noneconomic damages.[2]

---

[1] At the hearing on Dodson's motion for a new trial, Dodson argued that, because the jury found Dodson was injured, "there obviously has to be some pain and suffering associated with those injuries." The court responded: "Not necessarily. I thought he was malingering. I was surprised they awarded anything. I think they probably concluded, if not that he was malingering, that he was grossly overstating his injuries." Counsel countered, "And if Your Honor is correct, then . . . the jury would have come back and returned a defense verdict finding that he was not injured whatsoever or return a nominal verdict, but that clearly wasn't the case," and the court replied: "This was a nominal verdict."

[2] Dodson makes two other contentions. He argues that he was deprived of a fair trial by improper remarks made by the trial court. While we find no merit in this contention, it is in any event moot in light of our conclusion that Dodson is entitled to a new trial on damages. Dodson also challenges the admission of certain evidence used to impeach his credibility, consisting of evidence of a prior fall, evidence of a claim for loss of earnings which Dodson relinquished before trial, evidence of a workers' compensation claim for carpal tunnel syndrome many years ago, and surveillance tapes of Dodson taken during the trial. We discern no abuse of discretion by the trial court in the admission of any of this evidence. The prior fall was relevant to Dr. Wienir's opinion, in that Dodson's history of falling and other problems was one of the reasons Dr. Wienir did not believe the accident resulted in any neurological injury. The evidence on Dodson's relinquished claim for loss of earnings was relevant to Dodson's credibility. The evidence on the workers' compensation claim was presented by Dodson, not J. Pacific, and the trial court did not find the claim was relevant; the court expressly stated that its relevance would depend on whether or not Dodson claimed an injury

The circumstances of this case compel us to agree that the failure to award any damages for pain and suffering resulted in a verdict that was inadequate as a matter of law.

We review the precedents, and then apply the applicable principles to this case.

■ In some cases, courts have found jury awards which fail to compensate for pain and suffering inadequate as a matter of law. (E.g., *Haskins v. Holmes* (1967) 252 Cal.App.2d 580, 585–586 [60 Cal.Rptr. 659] (*Haskins*) [award insufficient where plaintiff sustained severe head injuries necessarily requiring surgery, but the trial judge awarded only $88.63 in excess of the plaintiff's actual medical expenses, in effect "allowing nothing for pain and suffering"; it was "patently obvious" that "substantial pain, suffering, shock and inconvenience" necessarily and inevitably accompanied the injuries].)[3] The courts have also stated, however, that an award that does not account for pain and suffering is "not necessarily inadequate as a matter of law" (*Haskins*, at p. 586), and that "[e]very case depends upon the facts involved" (*Miller v. San Diego Gas & Elec. Co.* (1963) 212 Cal.App.2d 555, 558 [28 Cal.Rptr. 126] (*Miller*)).

The controlling rule, we believe, was best stated in *Miller*, which affirmed a jury verdict that made no allowance for pain and suffering. *Miller* distilled

---

to his hand. And the surveillance tapes were relevant both to the extent of Dodson's injuries and to his credibility, and were "prejudicial" only in the sense that they undermined his claims.

[3] See also *Clifford v. Ruocco* (1952) 39 Cal.2d 327, 328–329 [246 P.2d 651] (damage award was inadequate where economic injuries alone exceeded the jury award; plaintiff, who was injured in an automobile collision, was confined to the hospital for 24 days, developed a painful infection, underwent an unsuccessful operation, continued to suffer from pain and swelling in her leg up to the time of trial, and was likely to continue to suffer for some time in the future); *Buniger v. Buniger* (1967) 249 Cal.App.2d 50, 53–54 [57 Cal.Rptr. 1] (damage award was "such as to shock the conscience and to require a reappraisal" where plaintiff underwent surgery and a 31-day hospitalization, and at the time of trial plaintiff continued to have difficulty performing normal household activities); *Gallentine v. Richardson* (1967) 248 Cal.App.2d 152, 153, 155 [56 Cal.Rptr. 237] (denial of new trial was abuse of discretion where jury made no award for pain and suffering to plaintiff who was injured by a gunshot wound while deer hunting was hospitalized for three days and confined to bed at home for another week, the wound took five to six months to heal and the healed wound bothered the plaintiff while lifting and bending); *Bencich v. Market St. Ry. Co.* (1937) 20 Cal.App.2d 518, 521–522 [67 P.2d 398] (verdict was "grossly inadequate" where plaintiff suffered a badly crushed foot, a six-month hospitalization with traction, amputation of part of the foot, five skin grafts, and the need to wear a specially prepared brace; it was "patent" that the amount awarded by the jury "barely, if at all, repays appellant his special damages").

this principle from the precedents it reviewed: Cases finding an award inadequate for failure to account for pain and suffering "involve[] situations where the right to recover was established and . . . there was also proof that the medical expenses were incurred because of defendant's negligent act." (*Miller, supra,* 212 Cal.App.2d at p. 558.) In such situations, *Miller* concluded, "[i]t is of course clear that . . . a judgment for no more than the actual medical expenses occasioned by the tort would be inadequate." (*Ibid.*) On the other hand, a verdict may properly be rendered for an amount less than or equal to medical expenses in cases where, "even though liability be established, a jury may conclude that medical expenses paid were not occasioned by the fault of the defendants."[4] (*Miller,* at p. 559; see also *Haskins, supra,* 252 Cal.App.2d at p. 586 [an award "for the exact amount of, or even less than, the medical expenses is not necessarily inadequate as a matter of law, because in the majority of cases there is conflict on a variety of factual issues— whether plaintiff received any substantial injury or suffered any substantial pain, or whether the medical treatment was actually given or given as a result of the injuries, or reasonable or necessary"].)

Our review of the precedents leads us to conclude that this case falls squarely among those in which the jury verdict was found to be inadequate as a matter of law. In Dodson's case, the factual conflicts that *Miller* and *Haskins* tell us may justify the jury's failure to award noneconomic damages— whether the plaintiff received any substantial injury or suffered any substantial pain; whether medical treatment was actually given or was given as a result of the injuries; and whether the medical treatment was reasonable or necessary—were resolved by the jury in its special verdict. In Dodson's case, we know—because the jury expressly decided—that J. Pacific's negligence was a cause of Dodson's injury, and that Dodson suffered economic damages "caused by the accident . . . ."[5] We know that he underwent surgery in which

---

[4] *Miller* was an action for injuries allegedly resulting from an electric shock, which occurred after the defendant reversed some wires while reconnecting them after installing a new transformer on the electric line serving the plaintiff's home. (*Miller, supra,* 212 Cal.App.2d at p. 556.) The jury returned a verdict for the plaintiff in the exact amount of her medical expenses. The court stated the jury " 'may well have believed that plaintiffs' injuries . . . [were] most minimal, to the point of being incapable of evaluation, and that plaintiffs would be fairly compensated if they only received their specials.' " (*Id.* at p. 559, quoting *Giddings v. Wyman* (1961) 32 Ill.App.2d 220, 223–224 [177 N.E.2d 641].) The court observed: "The evidence would here amply support a finding that plaintiff received no injury whatever. . . . Faced by this conflict in testimony and with evidence that there was negligence on the part of the defendant, it seems entirely probable that the jury felt that although plaintiff was entitled to no more than nominal damages, the kindest disposition of the case was to award to her an amount at least equivalent to her medical bills." (*Miller, supra,* 212 Cal.App.2d at p. 560.)

[5] J. Pacific claims in its brief that Dodson "did not prove causation." It asserts, for example, "it can reasonably be inferred that the jury accepted the defendant's experts' testimony" that Dodson's falls were not caused by J. Pacific's negligent act, "the jury did not believe that Dodson proved that his cervical surgery was caused by the incident of December 12, 2002,"

a herniated disc was removed and replaced with a metallic plate. We know the jury awarded damages, at least in part, for Dodson's surgical expenses.[6] A plaintiff who is subjected to a serious surgical procedure must necessarily have endured at least some pain and suffering in connection with the surgery. While the extent of the plaintiff's pain and suffering is for the jury to decide, common experience tells us it cannot be zero.

In short, this is not a case where the jury concluded that the "medical expenses paid were not occasioned by the fault of the defendants." (*Miller, supra,* 212 Cal.App.2d at p. 559.) On the contrary, the jury expressly concluded the opposite, finding that Dodson's damages were "caused by the accident . . . ." Dodson was hospitalized, underwent a serious surgery under general anesthesia, received physical therapy, used a walker for some time after the surgery, and so on. Where a plaintiff undergoes a serious surgical procedure which a jury's special verdict attributes to an accident caused in part by the negligence of the defendant, the plaintiff must necessarily have endured at least some pain and suffering, and a damage award concluding otherwise is therefore inadequate as a matter of law. As *Miller* stated, in cases where the right to recover is established, and there is also proof that the medical expenses were incurred because of the defendant's negligent act, "[i]t is of course clear that in such situation a judgment for no more than the actual medical expenses occasioned by the tort would be inadequate." (*Miller, supra,* 212 Cal.App.2d at p. 558.)

Because the award of damages was inadequate as a matter of law, the denial of a new trial on the issue of damages was an abuse of the trial court's discretion. Accordingly, the judgment must be reversed and the matter remanded for a new trial limited to the issue of the amount of Dodson's damages.

---

and "[t]he jury found that Dodson's neck complaints were not caused by the incident of December 12, 2002." These claims are contrary to the jury's findings. While the expert testimony on causation was in conflict, the jury expressly resolved that conflict in Dodson's favor when it answered "yes" to the question whether J. Pacific's negligence was a cause of injury to plaintiff, and when it awarded damages "suffered by the plaintiff caused by the accident . . . ."

[6] The $16,679 damages total was based on evidence of surgical bills totaling $13,901, a paramedic bill of $457, and physical therapy bills of about $10,000. In his motion for a new trial, Dodson's counsel submitted his own affidavit stating he had spoken with five jurors, who told him the damages award was comprised of the cervical surgery, the surgeon's fee and two to three months of physical therapy. While the trial court properly sustained J. Pacific's objections to counsel's declaration, it is clear from the claimed damage items alone that the award necessarily included at least some of Dodson's surgical expenses. Even J. Pacific contends in its brief that "[t]he jury most likely found that [Dodson] incurred medical bills not that he had pain and suffering."

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for a new trial solely on the issue of damages. Major Dodson is to recover his costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied September 24, 2007.