Filed 8/29/16  Garibaldi v. City of Long Beach CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERICA GARIBALDI, | B257300 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. VC058992) |
| CITY OF LONG BEACH, | |
| Defendant and Respondent; | |
| TRAVIS DEWAYNE COLTON, | |
| Defendant and Appellant | |

APPEALS from a judgment of the Superior Court of Los Angeles County, Joseph DiLoreto, Judge.  Affirmed in part, reversed in part and remanded.

Carpenter, Zuckerman & Rowley, Nicholas Rowley and Henry Peacor, for Plaintiff and Appellant Erica Garibaldi.

Charles Parkin, City Attorney, and Theodore B. Zinger, Deputy City Attorney, for Defendant and Respondent City of Long Beach; and for Defendant and Appellant Travis Dewayne Colton.

_____

After being hit by a truck owned by the City of Long Beach, Erica Garibaldi sued the City and its employee, Travis Dewayne Colton, for negligence. The City admitted liability. Following a trial concerning Garibaldi's comparative negligence and damages, the jury found in favor of Garibaldi, but awarded substantially less than the $36 million she had sought. The trial court denied her new trial motion and request for additur.

On appeal Garibaldi contends the jury's special verdict awarding her nothing for future pain and suffering was inadequate as a matter of law. She also contends the trial court erred in permitting an expert witness for the City to testify to an opinion not disclosed in his deposition and in prohibiting her from calling an undesignated expert in her rebuttal case. Colton, whom Garibaldi voluntarily dismissed from the action at the beginning of trial, has also appealed, contending the court erred in striking his costs memorandum on the ground he was not a prevailing party. We reverse the judgment to the extent the trial court determined Colton was not a prevailing party and remand for further consideration of his costs memorandum. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The November 2, 2010 Accident*

Colton, a Long Beach Department of Public Works employee, was making a left turn in a City-owned Ford F-350 pickup truck when the side of the truck struck then-16-year-old Garibaldi, who was riding her bicycle in the crosswalk. The impact caused Garibaldi to fall off her bicycle and hit her head on the pavement. Garibaldi was not wearing a helmet and suffered a brief loss of consciousness. She was immediately taken to the emergency hospital at the University of California, Irvine, where she was treated for a laceration to her head, admitted overnight for further testing and observation and released the following day.

2. *Garibaldi's Lawsuit*

a. *The complaint and the City's admission of liability*

In June 2011 Garibaldi sued the City and Colton for negligence, claiming she had suffered a moderate traumatic brain injury in the accident with permanent and debilitating consequences. Prior to trial the City admitted its liability for Garibaldi's injuries under a vicarious liability theory. Garibaldi voluntarily dismissed Colton from the action, and the case against the City went to trial before a jury on the contested issues of damages and Garibaldi's comparative negligence.

b. *The trial—conflicting expert testimony*

The trial began in January 2014 and consisted largely of conflicting testimony among expert witnesses over the nature and effect of Garibaldi's injuries. Garibaldi's experts, including Dr. Harris Fisk, a neurologist, Dr. Lester Zackler, a neuropsychiatrist, Dr. Jeffrey Schaeffer, a neuropsychologist, and Dr. Franklin Moser, a neuroradiologist, testified, based on their review of Garibaldi's medical records and additional testing and interviews with Garibaldi and her family, that Garibaldi had suffered a moderate traumatic brain injury with significant and permanent deficits. Garibaldi and members of her family also testified that, since the accident, Garibaldi had suffered confusion, anxiety and depression and had become uncharacteristically aggressive and prone to violent outbursts. Garibaldi urged the jury to award her $1.5 million in past noneconomic damages, $5 million in future economic damages and $30 million in future noneconomic damages.[1]

The City's expert witnesses, including Dr. Michael Brant-Zawadaki, a neuroradiologist, Dr. Barry Ludwig, a neurologist, and Dr. James Rosenberg, a neuropsychiatrist, opined, based on their review of Garibaldi's medical records, medical tests by treating physicians and their own testing, that Garibaldi had suffered a mild concussion—also known as mild traumatic brain injury—that had fully resolved within a few weeks after the accident with no permanent or lasting effects. The City attributed

---

[1] Garibaldi did not seek past economic damages at trial.

3

Garibaldi's continuing anxiety and depression and trouble sleeping, among her other professed ailments, to the challenges of being an unwed teenage mother (Garibaldi became pregnant a year after the accident) and her frustration with her parents' disapproval of her choices. It urged the jury to award Garibaldi no more than $25,000 for past pain and suffering and nothing for future economic or noneconomic damages.

3. *The Jury's Verdict*

In a special verdict the jury found the City vicariously liable for Garibaldi's injuries and awarded her $150,000 in past noneconomic damages, $30,000 in future economic damages and nothing for future noneconomic damages. It also found Garibaldi was negligent in failing to wear a helmet as required by the Vehicle Code and assessed her responsibility for her harm at 10 percent. Judgment was entered in favor of Garibaldi for $162,000, reflecting the 10 percent reduction in the damage award for her own negligence.

4. *Garibaldi's New Trial Motion and Request for Additur*

On April 14, 2014 Garibaldi moved for a new trial, arguing the jury's failure to award her anything for future noneconomic damages was inconsistent with other aspects of the jury's verdict. In addition, she argued, the court had made erroneous evidentiary rulings that were prejudicial and defense counsel had made improper and prejudicial statements during closing argument. Alternatively, she requested an additur to bring her total damages to $37 million, the amount she claimed she had proved by "uncontroverted" evidence at trial.

The court denied the new trial motion. The court also denied the additur request, finding the "jury [had] made an informed decision as to the severity of injury sustained and [there was] no irregularity in the jury's findings." The court found Garibaldi to be the prevailing party and awarded her costs in the amount of $22,916.36 "plus reporter fees to be determined" and struck Colton's costs memorandum, concluding he was not a prevailing party in the action.

4

## DISCUSSION

1. *The Trial Court Did Not Err in Denying Garibaldi's New Trial Motion Based on Legally Inadequate Damages*

   a. *Standard of review*

"A new trial shall not be granted upon the ground of . . . excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657; see *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872.) The trial court has broad discretion in ruling on a new trial motion, and the court's exercise of that discretion is accorded great deference on appeal. (*Decker*, at pp. 871-872; *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 747; see *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 61 ["reviewing court must uphold an award of damages whenever possible [citation] and all presumptions are in favor of the judgment"].) We can reverse the denial of a new trial motion for insufficient evidence or inadequate or excessive damages "'only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted.'" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1416; accord, *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.)

   b. *Governing law*

Unless otherwise proscribed by law, a tortfeasor is liable for all damage, economic and noneconomic, proximately caused by his or her tort. (Civ. Code, § 3333; *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 446-447.) Economic damages consist of objectively verifiable monetary losses, such as medical expenses and lost wages. (Civ. Code, § 1431.2, subd. (b).) Noneconomic damages, often referred to as "pain and suffering," are less quantifiable, but no less significant, nonpecuniary losses, such as physical pain and mental and emotional anguish. (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893 (*Capelouto*).) Full compensation includes damages not only for past economic and noneconomic harm

5

proximately caused by the tort, but also for those economic and noneconomic harms reasonably certain to occur in the future. (*Ibid.; Bellman v. San Francisco H.S. Dist.* (1938) 11 Cal.2d 576, 578.)

c. *The jury's verdict is not inadequate as a matter of law*

Garibaldi contends a new trial was warranted because the jury awarded her $30,000 in future economic damages but failed to compensate her for any future pain and suffering. Relying on *Capelouto, supra,* 7 Cal.3d 889 and *Dodson v. J. Pacific*, *Inc.* (2007) 154 Cal.App.4th 931 (*Dodson*), Garibaldi argues that an award that fails to compensate for pain and suffering when an injury is proved and special damages awarded is inadequate as a matter of law. Neither case supports Garibaldi's position.

In *Capelouto* the Supreme Court addressed whether an infant who suffered from extreme gastrointestinal injuries as a result of medical malpractice could recover damages for past pain and suffering on the same basis as an adult. After answering that question in the affirmative and concluding jury instructions to the contrary were in error, the Court observed that pain and suffering inevitably accompany grave injury: "'The items of pain, suffering and inconvenience . . . are inevitable concomitants with grave injuries. . . . A jury may not eliminate pain from wounds when all human experience proves the existence of pain.'" (*Capelouto*, *supra*, 7 Cal.3d at p. 896.) Accordingly, the Court held, a jury could infer pain and suffering without the necessity of expert testimony. (*Ibid.*)

In *Dodson*, *supra*, 154 Cal.App.4th 931, a slip-and-fall case, the jury awarded the plaintiff $16,679 in past economic damages but nothing for past pain and suffering. Relying on *Capelouto* and citing undisputed evidence the plaintiff had undergone back surgery as a direct result of the defendant's negligence, the court found the jury's failure to award any damages for past pain and suffering, in light of its award of economic damages, was inadequate as a matter of law: "We know the jury awarded damages, at least in part, for Dodson's surgical expenses. A plaintiff who is subjected to a serious surgical procedure must necessarily have endured at least some pain and suffering in connection with the surgery. While the extent of the plaintiff's pain and suffering is for

6

the jury to decide, common experience tells us it cannot be zero." (*Dodson*, at p. 938.) The court reversed the judgment and remanded for a new trial on damages.

Neither *Capelouto* nor *Dodson* establishes the rule advocated by Garibaldi—a verdict awarding some measure of damages for economic loss in a personal injury case without a concomitant award for pain and suffering is inadequate as a matter of law regardless of the gravity of the injury involved. In fact, the authorities Garibaldi cites are to the contrary. (See *Dodson*, *supra*, 154 Cal.App.4th at p. 936 ["an award that does not account for pain and suffering is 'not necessarily inadequate as a matter of law'"]; see also *Miller v. San Diego Gas & Electric Co.* (1963) 212 Cal.App.2d 555, 558 (*Miller*) ["[e]very case depends upon the facts involved"].)

In *Miller,* for example, plaintiff claimed she suffered severe and permanent injuries when she opened her mail box and received an electric shock from a faulty ground wire installed by the City of San Diego. The City presented evidence plaintiff's injuries, if any, were so transitory as to be virtually nonexistent. After the jury awarded $1,133.18, the exact amount of plaintiff's claimed medical expenses, and nothing for her past or future pain and suffering, she moved for a new trial, arguing the failure to award any pain and suffering damages made the verdict inadequate as a matter of law. The appellate court rejected that argument. "[T]here was a substantial conflict as to whether plaintiff received any substantial injury and as to whether bills incurred for medical examinations and treatment were rendered necessary by reason of the shock or whether they were necessary at all. The evidence would here amply support a finding that plaintiff received no injury whatever. . . . [I]t seems entirely probable that the jury felt that although the plaintiff was entitled to no more than nominal damages, the kindest disposition of the case was to award to her an amount at least equivalent to her medical bills. Obviously the trial court so appraised the situation and permitted the judgment to stand." (*Miller*, *supra*, 212 Cal.App.2d at p. 560.)

The *Dodson* court explicitly recognized the propriety of the *Miller* court's analysis but explained *Miller* was factually inapposite. In *Miller,* the *Dodson* court observed, it was vigorously disputed at trial whether the plaintiff had suffered any significant injury,

while in *Dodson* the evidence was uncontroverted that plaintiff had endured a back surgery as a result of the fall, and the jury found the injuries were proximately caused by the defendant when it found it liable. (*Dodson*, *supra*, 154 Cal.App.4th at p. 939.) When the physical injury was substantial, as it was in *Dodson,* pain and suffering are concomitant harms with the physical injury; and failure to provide any compensation for such injuries renders the verdict inadequate as matter of law. (*Id.* at p. 938.)

Garibaldi argues that, like the plaintiffs in *Capelouto* and *Dodson*, she, too, suffered egregious and lasting injury and that, as a result, an award of future economic damages without any recognition of future pain and suffering is inconsistent and inadequate as a matter of law. Neither *Capelouto* nor *Dodson*—indeed, no California appellate court—has held that a new trial is warranted whenever the plaintiff is awarded some form of *future* economic damages and nothing for future pain and suffering, nor does the record in this case compel such a conclusion. The jury found Garibaldi suffered injury in the accident and awarded her $150,000 to compensate her for the pain and suffering she had endured. However, it was vigorously contested at trial whether Garibaldi's injuries had since resolved and whether her current symptoms were the result of the accident or some other life event. The jury's modest award for future economic damages ($30,000 compared to the $5 million Garibaldi sought) plainly suggested the jury did not believe Garibaldi had suffered the serious injury she alleged or would require substantial care and treatment in the future, as she claimed. It was not in any way inconsistent to conclude, as both the jury and the trial court did, that some medical follow-up or small diminution in future wages would occur as a result of her injuries but that there would be no future pain and suffering directly attributable to those injuries. The trial court did not err in denying Garibaldi's request for a new trial on damages due to a legally inadequate damage verdict. (See *Rayii v. Gatica*, *supra*, 218 Cal.App.4th at p. 1416 [where the evidence was in substantial conflict, trial court did not err in denying new trial motion on ground of inadequate damages]; see generally *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 55 [members of

8

the jury are in the best position to assess the degree of the harm and fix a monetary amount as just compensation for mental and emotional distress].)

        2.  *Admission of Dr. Rosenberg's Limited Testimony on the Pearson Assessment Was Harmless Error*

            a.  *Relevant proceedings*

Dr. Schaeffer, Garibaldi's expert in neuropsychology, testified he administered a battery of tests to Garibaldi, most of which showed conclusively that she had not been exaggerating her symptoms or malingering. He acknowledged, however, that on one major test, the Minnesota Multiphasic Personality Inventory (MMPI) test, Garibaldi produced "extreme" test scores that some experts might attribute to exaggeration of her symptoms. In his experience, however, Garibaldi's extreme scores on the MMPI were fully consistent with one suffering from moderate-to-severe traumatic brain injury

During cross-examination Dr. Schaeffer explained he had scored the raw data from Garibaldi's MMPI test using a scoring service called Caldwell Reports. Counsel for the City then asked Dr. Schaeffer several general questions about the Pearson Assessment scoring service, a competitor of Caldwell Reports, and attempted to show him a report from Pearson Assessment interpreting Garibaldi's MMPI results. At a sidebar requested by Garibaldi, Dr. Schaeffer explained, "They have taken this protocol and submitted it to the other scoring service called 'Pearson' as a way of generating a report that they hope will impeach my impressions in the report." The court asked Dr. Schaeffer, "[Y]ou didn't use Pearson to interpret the data you gave them?" Dr. Schaeffer responded, "Neither did their neuropsychologist." The court then ruled, "Okay. Then we won't use that, will we? We're not going to use that." "If this wasn't used in this case and it wasn't submitted in this case, it's irrelevant to what they do."

Later in its defense case the City's expert in neuropsychiatry, Dr. Rosenberg, opined, consistently with his deposition testimony, that Garibaldi did not display symptoms indicative of unresolved traumatic brain injury. Relying on Garibaldi's medical records, his own interview with Garibaldi and additional tests he and other physicians administered to her, Dr. Rosenberg concluded that Garibaldi suffered from

anxiety and depression caused in large measure by conflicts she had with her family members over her unplanned pregnancy and her parenting choices and not by a traumatic brain injury. In particular, Dr. Rosenberg expressly disagreed with Dr. Schaeffer that Garibaldi's MMPI results were consistent with traumatic brain injury. According to Dr. Rosenberg, Garibaldi's MMPI test results, as scored by the Caldwell scoring service, "showed evidence of gross exaggeration" of her symptoms. Dr. Rosenberg also testified that after his deposition he had obtained for the first time the raw data from Garibaldi's MMPI results that had been attached to Dr. Schaeffer's deposition as an exhibit. Using that raw data, Dr. Rosenberg rescored Garibaldi's MMPI test using the Pearson Assessment scoring service. When the Pearson Assessment was employed, he testified, Garibaldi's test results were even more extreme and strengthened his already firm belief that she had been exaggerating symptoms. The court overruled Garibaldi's objection that Dr. Rosenberg's testimony on this point was beyond the scope of his deposition and subject to exclusion.

### b. *The error in admitting Dr. Rosenberg's testimony concerning the MMPI results using the Pearson Assessment was harmless*

A party must disclose either as part of the expert witness exchange or at the expert's deposition, if the expert is asked, the substance of the facts and the opinions that the expert will testify to at trial. Failure to disclose is grounds for excluding the evidence. (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 919; *Jones v. Moore* (2000) 80 Cal.App.4th 557, 565.) The reason for requiring a pretrial disclosure of the opinion and the expert's basis for the opinion is plain: "Only by such disclosure will the opposing party have reasonable notice of the specific areas of investigation by the expert, the opinions he has reached and the reasons supporting the opinions, to the end the opposing party can prepare for cross-examination and rebuttal of the expert's testimony." (*Kennemur*, at p. 919; see *Bonds v. Roy* (1999) 20 Cal.4th 140, 148 [important goal of discovery statutes governing expert witnesses is to enable parties to properly prepare for trial; "[a]llowing new and unexpected testimony for the first time at trial" is contrary to that purpose].)

10

Relying on *Kennemur,* Garibaldi contends, as she did in her new trial motion, the court erred in permitting Dr. Rosenberg to testify to the results of Garibaldi's MMPI using the Pearson Assessment because he did not disclose in his deposition that he had, or would in the future, rely on that tool as a basis for his opinion. The City, on the other hand, argues that Dr. Rosenberg did not provide a new opinion at trial, but he simply supplied a new basis for the opinion he had offered at deposition.

Even though Dr. Rosenberg was not expressly asked at his deposition whether he had identified each and every basis for his opinion (in addition to whether he had disclosed all of his opinions),[2] Dr. Rosenberg's use of, and reliance on, a new scoring service as the basis for his opinion came as an unfair surprise to Garibaldi—an improper litigation tactic that was aggravated by the City's failure to advise the court and opposing counsel during the sidebar colloquy about the Pearson Assessment while Dr. Schaffer was on the stand that it intended to introduce Dr. Rosenberg's testimony concerning the Pearson Assessment's scoring and interpretation of Garibaldi's MMP1 data. The trial court erred in permitting the testimony. (See *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 780 ["a party's expert may not offer testimony at trial that exceeds the scope of his deposition testimony *if* the opposing party had no notice or expectation that the expert will offer the new testimony, or *if* notice of the new testimony comes at a time when deposing the expert is unreasonably difficult"]; *Jones v. Moore*, *supra*, 80 Cal.App.4th at p. 565 [same].)

Notwithstanding this error, reversal is not required because Garibaldi has not shown admission of the objectionable testimony resulted in a miscarriage of justice. (Evid. Code, § 353, subd. (b); Cal. Const., art. 6, § 13 ["[n]o judgment shall be set aside,

---

[2] According to the excerpts of Dr. Rosenberg's deposition attached to Garibaldi's new trial motion, Garibaldi's counsel asked Dr. Rosenberg at deposition, "Have we gone over all of your opinions?" Dr. Rosenberg stated he planned to consult with another defense expert, Dr. Kalechstein, as needed but that he had provided all of the opinions he was going to provide in the case. Asked again whether there were "any other opinions you have provided to defense counsel that you haven't discussed with me here today," Dr. Rosenberg stated, "No."

or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [a miscarriage of justice may be found on appeal only when court, after examination of the entire cause, is of the opinion that it is """"reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error""""]; *San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1301-1302 [same].)

Contrary to Garibaldi's suggestion, Dr. Rosenberg's reliance on the Pearson Assessment was not the explosive evidence Garibaldi now claims it to be. Both Dr. Schaeffer and Dr. Rosenberg testified Garibaldi's results on the MMPI test using Caldwell were extreme. Dr. Rosenberg expressly testified those results were extreme regardless whether her test was scored using the Pearson Assessment or Caldwell. He also testified to other tests and reasons for his opinions unrelated to the Pearson Assessment. When the record is considered as a whole, it is not reasonably probable that, absent the admission of Dr. Rosenberg's limited testimony as to the MMPI results using the Pearson Assessment, that Garibaldi would have achieved a more favorable verdict. (See generally *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801 (*Cassim*) ["[a]lthough the *Watson* standard for determining whether a miscarriage of justice has occurred is most frequently applied in criminal cases, it applies in civil cases as well"].)

3. *The Trial Court Did Not Err in Excluding Dr. Gross's Rebuttal Testimony*

a. *Relevant proceedings*

As part of its defense case the City presented the testimony of Dr. Geoffrey Miller, an orthopedic surgeon, who opined that Garibaldi had not suffered any significant orthopedic injury in the accident. Dr. Miller elaborated briefly, and without objection, that, while the medical reports of Dr. Benjamin Gross, one of Garibaldi's treating neurologists, showed that "electrical testing" of Garibaldi's nerves had revealed some evidence of radiculopathy, Dr. Gross did not indicate in his report that those nerve

12

injuries were the result of traumatic brain injury. In Dr. Miller's opinion, based on his review of Dr. Gross's notes, Garibaldi's radiculopathy was the result of an illness or injury to her peripheral nerves unrelated to brain injury.

During a vigorous cross-examination Garibaldi's counsel questioned Dr. Miller repeatedly about his belief that Dr. Gross had not directly connected Garibaldi's radiculopathy to brain injury caused by the accident.[3] After completing his cross-examination Garibaldi's counsel advised the court he intended to call Dr. Gross as a rebuttal witness. According to Garibaldi's offer of proof, Dr. Gross would opine that Garibaldi's numerous symptoms, including her radiculopathy, was connected to a brain or central nervous system injury caused by the accident. The City objected, asserting Garibaldi was attempting to introduce the opinion of an undesignated expert disguised as impeachment/rebuttal testimony. The City's counsel also observed that most of the detailed testimony to which Garibaldi objected had been elicited by her own counsel during Dr. Miller's cross-examination. After some colloquy by both counsel and the court, the trial court sustained the objection. Because Dr. Miller "never contradicted the

_____

3    Dr. Miller reiterated on cross-examination: "[I]n this particular case, the electrical test which was performed because [Dr. Gross] was looking for pinched nerves in the spine revealed something he did not expect, that the disease process was actually in the extremities. And that is not from the traumatic brain injury. And, in fact, he never made such a connection. You're making the connection, but [Dr. Gross's] reports didn't make a connection between a brain injury and the polyneuropathy that he found on his electrical testing."

At another point in cross-examination Garibaldi's counsel asked, "So what you're saying and what you told the defense counsel on direct exam is that Dr. Gross, a neurologist who did this objective abnormal—or testing showed abnormality is not of the opinion that it's connected to brain injury?" Dr. Miller replied, "No, on the contrary. He said that her brain injury was causing her problems. What he didn't explain [in his reports] was why she has this secondary problem in her extremities. He only talked about the brain injury and the trauma. He didn't discuss the neuropathy after he did the test. In the test he wrote . . . 'prolonged left ulnar nerve parameter abnormalities found in polyneuropathies. Multiple nerves. Not brain. Multiple nerves. . . . Prolonged left ulnar sensory parameter also consistent with polyneuropathic process. Prolonged sensory ulnar nerve found in early cubital tunnel.' Which means a pinched nerve at the elbow, not coming from the brain."

13

fact that [Garibaldi] has a brain injury," the court explained, Dr. Gross's additional opinions would be improper rebuttal and delay the trial unnecessarily.

        b. *The court properly determined Dr. Gross's testimony was inadmissible as impeachment evidence*

With limited exceptions, upon objection by the opposing party, an undesignated expert is barred from giving opinion testimony in the nondesignating party's case-in-chief. (See Code Civ. Proc., § 2034.300; *Bonds v. Roy, supra,* 20 Cal.4th at p. 148; *Kalaba v. Gray* (2002) 95 Cal.App.4th 1416, 1422.) One exception is that a party may call an undesignated expert at trial to impeach an expert witness offered by the opposing party. (Code Civ. Proc., § 2034.310, subds. (a), (b); *Tesoro Del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 641 (*Tesoro*).) To be admissible as impeachment evidence, however, the undesignated expert's testimony must be limited to the "falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness[;] [it] may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subd. (b); *Tesoro*, at p. 641 ["[t]rial courts strictly construe the foundation fact requirement in Code of Civil Procedure section 2034.310 'so as to "prevent a party from offering a contrary opinion of his expert under the guise of impeachment"'"]; see *Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1068 [an undisclosed expert witness called for impeachment purposes is permitted to testify only that a foundational fact relied upon by a prior expert is either incorrect or nonexistent]; *People v. Bell* (1989) 49 Cal.3d 502, 532 [impeachment is not general rebuttal; the purpose and permissible scope of impeachment is to call into question the truthfulness of a witness's testimony].)

Dr. Miller testified to the facts as presented in Dr. Gross's reports and stated Dr. Gross had not, at least in his reports, connected the radiculopathy to brain injury. Had Dr. Gross been offered to rebut that foundational fact—that his reports failed to connect the radiculopathy to the brain injury—that testimony would have been permissible. However, according to Garibaldi's offer of proof, Dr. Gross's purported rebuttal testimony was not intended to rebut a foundational fact but to fill in a gap in

14

those reports by doing through trial testimony what his reports failed to do specifically—link Garibaldi's radiculopathy to an injury to Garibaldi's central, rather than peripheral, nervous system. That opinion could have been elicited on direct examination had Garibaldi designated Dr. Gross as an expert. It was not proper rebuttal by an undesignated expert.[4] The trial court did not abuse its discretion in excluding it. (See *Tesoro, supra,* 200 Cal.App.4th at p. 641 ["'[t]he trial court is vested with a sound discretion as to the permissible scope of evidence offered in rebuttal'" and its ruling will not be disturbed absent abuse of that broad discretion]; *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 145-146 [court properly excluded opinion of undesignated expert offered under guise of rebuttal; "Drigg's proposed testimony did not contradict a foundational *fact* testified to by defendants' experts but instead offered a contrary *opinion* on the permeability rate of the soil"]; *Gallo v. Peninsula Hospital* (1985) 164 Cal.App.3d 899, 904 ["'calling an expert witness to express an opinion contrary to that expressed by another expert witness is not the "impeachment" contemplated by Code Civ. Proc., § 2037.5,'" precursor to Code Civ. Proc., § 2034.310].)

In addition, the court also excluded Dr. Gross's rebuttal testimony under Evidence Code section 352. Noting that Dr. Miller did not contradict Dr. Gross's opinion that Garibaldi had suffered moderate traumatic brain injury in the accident, the trial court ruled that any rebuttal was only marginally relevant and would result in undue consumption of time and delay on a collateral issue. Garibaldi does not address on appeal how that determination was an abuse of the court's broad discretion under Evidence Code section 352 or, even if it were, how the exclusion of the very limited

---

[4]  Although Dr. Gross was Garibaldi's treating physician and not a retained expert, Garibaldi was still required to identify him in her expert designation in order to preserve her right to elicit his expert opinion on direct examination. (See *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 38; *Kalaba v. Gray* (2002) 95 Cal.App.4th 1416, 1423 [because treating physicians are not experts retained for purpose of trial, party is not required to provide expert witness declaration required in Code Civ. Proc., § 2034.210, subd. (b); however, party must still identify the physician in her expert designation to preserve right to elicit expert opinion testimony].)

15

testimony permitted on rebuttal (as opposed to the broad testimony she alleges she was entitled to elicit) resulted in a miscarriage of justice. (See *Grail Semiconductor*, *Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 798 [appellant's burden on appeal to show both error in admitting or excluding evidence and prejudice—that it is reasonably probable a more favorable result would have occurred absent the error]; *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 692 [same].)

        4. *Defense Counsel's Comments on Garibaldi's Failure To Call Witnesses*

           a. *Relevant proceedings*

During closing argument Garibaldi's counsel quoted extensively from reports authored by Dr. Gary Chen, Garibaldi's treating orthopedist, and Dr. Gross. In response, in his closing argument the City Attorney reminded the jury that Garibaldi's counsel's statements in closing argument, including his purported recitations from those records, were not evidence. He also briefly observed that Drs. Chen and Gross did not testify as witnesses.[5] Garibaldi's counsel objected, complaining the court had precluded him from calling Dr. Gross as a witness. The court overruled the objection.

Later in closing argument the City Attorney stated, without objection, "The first question you should ask, though, is who didn't testify because I think it's important to ask yourself this question. Who didn't testify?" He then identified several potential percipient witnesses—Garibaldi's family members and the father of her child—who had been referred to throughout trial but were not called and stated, "I submit to you the reason we didn't hear [those witnesses] is because they would not substantiate the

---

5     The City Attorney argued in closing, "One of the most important instructions that you were given is that the statements of counsel [are] not evidence. What I'm telling you is not evidence. Mr. Rowley [(plaintiff's counsel)] was up here for almost an hour and a half . . . and he said an awful lot of things; he showed you an awful lot of things. That is not necessarily evidence. . . . So if Mr. Rowley puts up a chart that says the UC Irvine medical records said this and this and this[,] [h]e is saying that, but you didn't actually see the UC Irvine medical records. And, in fact, Dr. Chen didn't even come in and testify. [Rowley] was quoting all kinds of things from Dr. Chen's records. Dr. Chen didn't even testify at this trial; neither did Dr. Gross."

16

testimony that you did hear.  And because they wouldn't support the plaintiff's case, they weren't called.  Plaintiff's going to say, well, you know, the defendant could call them.  We don't have the burden of proof.  The plaintiffs have the burden of proof.  And their failure to call them should weigh heavily on your minds.  And you should ask yourself: Why didn't I hear from those important witnesses?"  Again, Garibaldi's counsel did not object.  The City Attorney continued, "More importantly, why didn't any of the treaters hear from any of them—to form their conclusions and opinions?"  At this point, Garibaldi's counsel moved to strike and argued the City Attorney was improperly inviting the jury to speculate as to what the treating physicians, if called, would have said.  The court overruled the objection.

b.  *Governing law*

An attorney generally has wide latitude in deciding what to include, exclude and emphasize in closing argument.  (*Yarborough v. Gentry* (2003) 540 U.S. 1, 7 [124 S.Ct. 1, 157 L.Ed.2d 1]; *Cassim*, *supra*, 33 Cal.4th at pp. 795-796 [counsel's latitude "to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom," internal quotation marks omitted].)  In particular, counsel may comment on the opposing party's failure to produce evidence or logical witnesses necessary to prove or disprove a particular fact.  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275 ["[a]s for the prosecutor's reference to witnesses not called, it is neither unusual nor improper to comment on the failure to call logical witnesses"]; *Neumann v. Bishop* (1976) 59 Cal.App.3d 451, 480.)  However, the broad permissible scope of closing argument does not extend to arguments that "assume facts not in evidence or invite the jury to speculate as to unsupported inferences."  (*Cassim*, at pp. 795-796; accord, *City of Los Angeles v. Decker*, *supra*, 18 Cal.3d at p. 870; *Malkasian v. Irwin*, *supra*, 61 Cal.2d 738, 747.)  Thus, counsel is not permitted to speculate as to what an uncalled witness would have said (*Gonzales,* at p. 1275) or to argue the jury should draw an adverse inference from the plaintiff's decision to call one witness over another absent some basis for drawing the inference.  (*Neumann*, at pp. 479, 482 ["[it] was pure

17

speculation to assume that the failure to present those witnesses was because they would give testimony favorable to plaintiff" and the court would have erred had it given an instruction permitting an adverse inference]; *Smith v. Covell* (1980) 100 Cal.App.3d 947, 957.)

c. *Some of the City Attorney's remarks were proper; others were close to the line; still others were improper; however, none compels reversal*

Garibaldi contends the remark highlighting Dr. Gross's absence was misleading because it implied Garibaldi could have called Dr. Gross as a witness when, in fact, the trial court had expressly precluded her from doing so. Her argument mischaracterizes the record. As discussed, the trial court precluded Garibaldi from calling Dr. Gross in rebuttal; it did not preclude her from calling him during her case-in-chief. To the extent Garibaldi argues defense counsel's comment improperly implied she had deliberately suppressed Dr. Gross's testimony because he would have testified adversely to her, that, too, stretches too far. The brief remark, made in conjunction with the proper admonition that counsel's arguments are not evidence, was unaccompanied by any speculation or suggestion that Dr. Gross would have testified adversely to Garibaldi; and the jury was not likely to have interpreted it in that manner. In fact, Dr. Gross's firm belief that Garibaldi had suffered moderate traumatic brain injury in the accident was uncontroverted at trial. (The validity of Dr. Gross's opinion was contested at trial; the fact that he held such an opinion was not.) Thus, even if we were to credit Garibaldi's characterization of the comment, there is simply no reasonable probability the jury would have been misled into believing Dr. Gross would have testified adversely to Garibaldi. (See *Cassim, supra,* 33 Cal.4th at pp. 800-801 [reversal for attorney misconduct required only when it is reasonably probable more favorable verdict would have been reached absent error]; *People v. Boyette* (2002) 29 Cal.4th 381, 455-456 ["'"[i]ndirect, brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error"'"].)

18

More troubling is the City Attorney's explicit statement in closing argument that Garibaldi did not call certain family members as witnesses because they "would not have substantiated" her case. With this remark, the City Attorney exceeded the latitude otherwise afforded to counsel in closing argument. There could be "a myriad of reasons" for a party's failure to call a potential witness other than the witness would testify adversely. (*Davis v. Franson* (1956) 141 Cal.App.2d 263, 270.) Absent some support for the proposed inference, it was improper for the City Attorney to suggest to the jury that the failure to call a particular witness was a calculated effort to suppress unfavorable evidence. (*Smith v. Covell*, *supra*, 100 Cal.App.3d at pp. 956-957.) However, because Garibaldi did not object to those comments at trial, she has forfeited the ability to raise it on appeal. (*Horn v. Athison*, *T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610 ["Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. [Citations.] The purpose of the rule requiring the making of timely objections is remedial in nature , and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial"]; *Neumann v. Bishop*, *supra*, 59 Cal.App.3d at p. 482 [same].)

The City Attorney's comment highlighting the absence of Garibaldi's treating physicians as witnesses, in contrast, was met with a prompt objection (albeit in the form of a motion to strike). Because that comment closely followed the City Attorney's improper speculation that Garibaldi's uncalled relatives would have testified adversely to her, this statement could have been understood as an invitation to infer that the treating physicians, too, would not have supported Garibaldi's theory of the case. This was improper, and the court should have sustained the objection and instructed the jury to disregard the argument. (*Smith v. Covell*, *supra*, 100 Cal.App.3d at p. 956 ["Defense counsel in his rebuttal argument commented on plaintiffs' failure to call as witnesses the doctors at Scripps Clinic who had treated Mrs. Smith for injuries sustained in the accident; the implication was that such doctors would have testified adversely to plaintiff's case. The plaintiffs made a timely objection to this argument but were

19

overruled. These doctors were equally available to subpoena by defendant had she chosen to call them. The inferences raised by the counsel's argument were improper."]; *Neumann v. Bishop*, *supra*, 59 Cal.App.3d at pp. 456-457.) Nevertheless, the remark was so brief, interrupted by an objection and the trial court's instruction to "move on," that, when considered in context of the trial as a whole, it is not reasonably probable Garibaldi would have received a more favorable verdict in the absence of the improper, and uncured, remark.

Finally, Garibaldi's contentions that the City Attorney's comments amounted to inadmissible hearsay and violated the Confrontation Clause of the Sixth Amendment are without merit. As the jury was instructed, counsel's remarks in closing argument are not evidence. (*Beagle v. Vasold* (1966) 65 Cal.2d 166, 180-181; CACI Nos. 101; 106.) In addition, the Sixth Amendment right to confrontation does not apply to civil proceedings. (*People v. Otto* (2001) 26 Cal.4th 200, 214.)

5. *The Court Did Not Err in Denying Garibaldi's Motion for a Directed Verdict on the City's Affirmative Defense of Comparative Negligence*

a. *Standard of review*

A motion for directed verdict must be denied when the party opposing the motion has presented any substantial basis to justify submission of the case to the jury. (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359; *Bell v. State of California* (1998) 63 Cal.App.4th 919, 927.) As the Supreme Court explained in *Newing*, """"A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party.""" (*Newing,* at pp. 358-359; accord, *Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 174 [directed verdict properly granted only when, as a matter of law, the evidence is insufficient to permit a jury to find in favor of the party opposing the motion]; *Bell*, at p. 927 ["All inferences and intendments are resolved in favor of denial." In this, the scope of the trial

court's review, and ours, is much like appellate review on a claim of insubstantial evidence"].)

          b. *The City presented evidence of Garibaldi's negligence as a contributing cause of her injuries*

Comparative negligence is defined as conduct on the part of the plaintiff that "falls below the standard to which he should conform for his own protection, and which is a legally a contributing cause" in bringing about the plaintiff's harm. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 304.) To negate or reduce his or her liability for negligence based on a comparative negligence affirmative defense, "a defendant has the burden of establishing that some nonzero percentage of fault is properly attributed to the plaintiff, other defendants, or nonparties to the action." (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1285; *Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225, 1233.)

The City's theory at trial was that Garibaldi had violated statutes requiring her to wear a helmet while riding her bicycle in the street (see Veh. Code, §§ 21292, 21212) and that such a statutory violation created a presumption of negligence under the doctrine of negligence per se. (See Evid. Code, § 669; *Klein v. Bia Hotel Corp.* (1996) 41 Cal.App.4th 1133, 1140 [negligence per se doctrine provides that negligence of a person is presumed if he violated a statute or regulation of a public entity, the injury resulted from an occurrence that the regulation was designed to prevent and the person injured was within the class for whose protection the regulation was adopted]; *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526 [same]; *Daum v. SpineCare Medical Group, Inc.* (1997) 52 Cal.App.4th 1285, 1306 [to benefit from presumption of negligence in negligence per se doctrine, plaintiff must show defendant's statutory violation caused her injury].)

Garibaldi contends the court erred in denying her motion for a directed verdict because the City "failed to present any medical testimony whatsoever" that Garibaldi's failure to wear a helmet caused or contributed to her traumatic brain injury. At the threshold, even assuming Garibaldi is correct that expert testimony was necessary to

21

assist the jury in determining whether the use of a helmet could have prevented or reduced a traumatic brain injury, the City presented the testimony of an accident reconstruction expert who specifically opined, based on his experience and review of studies used in his reconstruction analysis, helmets worn by bicyclists prevented or reduced head injury in bicycle-to-car accidents. Moreover, there was uncontroverted evidence Garibaldi suffered a substantial laceration on her scalp when her head hit the pavement. It was certainly within the province of lay jurors to understand, without the assistance of expert testimony, that wearing a helmet could have prevented, or at least reduced the extent of, that injury. (Cf. Evid. Code, § 801, subd. (a) [pertinent question for admission of expert testimony is whether opinion would assist jury]; *People v. Prince* (2007) 40 Cal.4th 1179, 1222 [expert testimony is generally inadmissible on topic "so common" that jurors of ordinary education could reach a conclusion as intelligently as the witness].) The jury considered all the evidence and found the City 90 percent at fault, a reasonable finding in the context of the evidence presented. The court did not err in denying Garibaldi's motion for a directed verdict or her subsequent motion for a new trial on this ground.

6. *The Trial Court Erred in Striking Colton's Costs Memorandum on the Ground He Was Not the Prevailing Party*

At the beginning of trial the City admitted liability in exchange for Garibaldi dismissing Colton from the action. Neither the stipulation nor the minute order dismissing Colton addressed Colton's costs. On March 14, 2014, together with a proposed judgment, the City Attorney filed a memorandum of costs seeking to recover $21,005 in costs on Colton's behalf as the prevailing party.[6] The court struck Colton's costs memorandum on the ground Garibaldi, not Colton, was the prevailing party.

The trial court erred. As a party in whose favor a dismissal was entered, Colton is entitled to costs as a matter of right as a prevailing party. (See Code Civ. Proc., § 1032, subds. (a)(4) [prevailing party includes party "in whose favor a dismissal is entered"];

---

6    Both Colton and the City were represented by the City Attorney in the action.

22

(b) [except as provided by statute, a prevailing party is entitled as a matter of right to recover its costs in the action]; see also *Charton v. Harkey* (2016) 247 Cal.App.4th 730, 739 [a prevailing party is entitled to recover costs as a matter of right even if that party joined with nonprevailing defendants in resisting the plaintiffs' claims]; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 441 [current version of Code Civ. Proc., § 1032 contains no "unity of interest" exception that would permit trial court to deny costs to a prevailing defendant who shared a unity of interest with a nonprevailing defendant].) Garibaldi could have prevented this result by obtaining a costs waiver as part of the stipulation for dismissal. (See Code Civ. Proc., § 1032, subd. (c) ["[n]othing in this section shall prohibit parties from stipulating to alternative procedures for awarding costs in the litigation"]; *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147 [Code Civ. Proc., § 1032 "establishes only a default rule"; "[w]hen parties settle a case, they are free to allocate costs in any manner they see fit, although they must do so in language specifically addressing such allocation"].) Because she did not do so, costs are governed by the plain language of Code of Civil Procedure section 1032. (See *DeSaulles*, at p. 1148.)

Garibaldi alternatively contends, as she did in her motion to tax Colton's costs, that Colton is not entitled to any costs because each of his alleged cost items were entirely duplicative of costs necessarily incurred by the City in this litigation. (See *Charton v. Harkey*, *supra*, 247 Cal.App.4th at pp. 744-745 ["""[w]hen a prevailing party has incurred costs jointly with one or more other parties who are not prevailing parties for purposes of an award of costs, the judge must apportion the costs between the parties [based on the reason the costs were incurred and whether they were reasonably necessary to the conduct of the litigation by the jointly represented party who prevailed]"""]; *Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 315.) In addition, observing Colton had denied he was negligent in his response to her request for admission on this point, Garibaldi argues she is entitled to reasonable attorney fees and expenses in prosecuting the action against Colton up through his dismissal, which, according to Garibaldi, occurred only after Colton and the City admitted liability.

(See Code Civ. Proc., § 2033.420, subd. (a) [allowing reasonable attorney fees under certain conditions when opposing party denied in request for admission a fact that was later proved at trial]; *City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 336.)

The trial court, not the appellate court, is the proper forum to consider each of the arguments in the first instance. We hold only that, absent an agreement as to costs in exchange for Garibaldi's dismissal of Colton from the action, Colton meets the requirements of a prevailing party under Code of Civil Procedure section 1032. The trial court's order striking Colton's costs memorandum solely on the ground that he did not meet the statutory definition of a prevailing party was error.

## DISPOSITION

The judgment is reversed to the extent the trial court struck Colton's costs memorandum on the ground he was not a prevailing party, and the matter is remanded for further proceedings not inconsistent with this appeal. In all other respects the judgment is affirmed. The City and Colton are to recover its and his costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.



GARNETT, J.[*]


---

Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.