Filed 5/21/24; Certified for Publication 6/6/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID AUDISH, | D081689 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00017566-CU-PA-CTL) |
| DAVID MACIAS et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge. Affirmed.

Rejali Law Firm and Omid Rejali for Plaintiff and Appellant.

Fitzgerald Kreditor Bolduc Risbrough and Robert C. Risbrough for Defendants and Respondents.


I

INTRODUCTION

Plaintiff David Audish appeals a civil judgment entered after the rendition of a jury verdict in an automobile collision case. The jury found Audish and defendant David Macias both operated their vehicles negligently

and each party's negligence was a substantial factor in causing harm to Audish. The jury found Audish suffered $65,699.50 in damages, including $29,288.94 for past medical expenses, $3,620 for past non-economic losses, and $32,790.56 for future medical expenses, and it assigned each party 50 percent of the responsibility for these losses.

On appeal, Audish contends the trial court abused its discretion by admitting evidence that he would have Medicare medical insurance at the age of 65. He also argues the jury returned an impermissible compromise verdict and erred by failing to award him damages for future non-economic losses. We reject these claims and affirm the judgment.

## II

## BACKGROUND

A. *Factual Background*

On November 2, 2017, Audish drove his vehicle westbound on a major San Diego thoroughfare. He drove his vehicle at a speed of 55 miles per hour and the speed limit was 45 miles per hour. Meanwhile, Macias drove a vehicle owned by his father, Juan Macias (Juan), northbound on a street that intersected with the thoroughfare. Macias made an illegal lefthand turn from the intersecting street across the thoroughfare's eastbound traffic lanes and onto its westbound traffic lanes. The parties' vehicles collided.

Audish suffered a mild concussion and reported experiencing anxiety, insomnia, light sensitivity, fatigue, headaches, neck pain, nausea, loss of balance, vomiting, dizziness, brain fog, and memory loss after the accident. A CT scan did not show that he suffered from internal bleeding, swelling, or a skull fracture. However, his physician prescribed him an antinausea medication and an antidepressant medication to treat his concussion-related symptoms.

B. *Procedural Background*

In April 2018, Audish and his wife filed suit against Macias and Juan for negligence, negligent entrustment, and loss of consortium.

After a trial, the jury returned a special verdict finding Audish and Macias were both negligent in the operation of their vehicles (by votes of 11–1), Macias' negligence was a substantial factor in causing Audish to suffer harm (by a vote of 9–3), and Audish's negligence was a substantial factor in causing his own harm (by a vote of 12–0). The jury found Audish had $29,288.94 in past medical expenses (by a 12–0 vote), $0 in past lost earnings (by an 11–1 vote), and $3,620 in past non-economic losses (by an 11–1 vote). It found he would have $32,790.56 in future medical expenses (by a 10–2 vote), $0 in future non-economic losses (by an 11–1 vote), and $0 in future lost earnings (by a 12–0 vote). Further, it found Audish's wife did not sustain a loss of consortium (by a 12–0 vote). The jury assigned Audish and Macias each 50 percent of the responsibility for these losses (by a 12–0 vote).[1]

Audish moved for a partial new trial on the issue of damages. He claimed the evidence was insufficient to support the jury's findings that he had no past or future lost earnings. He also argued the verdict was contrary to law because there was an alleged inconsistency between the jury's finding that he would incur future medical expenses and its finding that he would not suffer any future non-economic losses. Relatedly, he argued the purportedly inadequate damages award reflected an impermissible

---

[1]     Audish and his wife named Juan as a defendant based on his ownership of the vehicle driven by his son. The special verdict form does not address Juan's liability and it is not apparent from the record whether and under what circumstances he was dismissed from the action. However, the judgment states, "[Juan's] liability pursuant to the parties [sic] stipulation is limited to $15,000."

3

compromise verdict. The trial court denied the motion for a partial new trial and entered judgment in accordance with the verdict.

Audish appeals the judgment.[2]

## III

## DISCUSSION

### A. *The Trial Court did not Err By Admitting Medicare-Related Evidence*

Audish argues the trial court violated the collateral source rule by admitting evidence that he would have Medicare insurance at age 65. As we will explain, we discern no error in the court's evidentiary rulings.

#### 1. *Additional Background*

Prior to trial, Audish filed a motion in limine that sought to preclude the admission of evidence that he had, or would have, medical insurance. Audish did not include the motion in limine in the appellate record, so we cannot describe its contents with specificity. However, at a pretrial hearing, the trial court stated that the motion sought "to preclude any mention of the availability of healthcare coverage after the accident." The court granted the motion in part, and denied it in part, reasoning that an expert witness with a proper foundation could testify about the reasonable value of medical care based on the rates insurers pay for medical treatments.

On the fifth day of the six-day trial, Brook Feerick, a nurse and life-care planner, testified as a witness on Audish's behalf. She prepared a life-care plan for Audish, which compiled and summarized the types and costs of the medical treatments Audish's medical professionals recommended for him

---

[2]     On his notice of appeal, Audish purports to appeal from both the judgment and "the denial of [his] motion for a new trial ...." An order denying a motion for a new trial is not appealable; however, it is reviewable on appeal from the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.)

4

due to the automobile accident. She calculated the average costs for each medical treatment by relying primarily on three sources—a textbook called the Physician's Fee Reference, a textbook called National Fee Analyzer, and an online database called Fair Health. Based on these sources, Feerick estimated Audish's total future medical costs would be $1,417,146.

On cross-examination, Feerick stated that she based her cost estimates on the average amounts medical providers *charged* patients for their medical treatments, not the negotiated (and often discounted) amounts insurers *actually* pay providers for the treatments. Thereafter, defense counsel asked Feerick whether Audish would be eligible for Medicare at age 65 and, over a relevance objection that the trial court overruled, she replied, "I assume so." Then, after another overruled relevance objection, Feerick agreed with defense counsel that her estimates did not account for "what Medicare would pay ...." She also admitted insurers sometimes pay less for medical treatments than the amounts health care providers bill for them.

2. *Analysis*

Audish challenges the evidentiary rulings allowing Feerick to testify that she "assume[d]" he would be eligible for Medicare at age 65, her future medical cost estimates did not account for the amounts Medicare would actually pay for the medical treatments recommended by his medical professionals, and insurers sometimes pay less for medical treatments than the amounts health care providers charge for them. Although Audish does not explicitly refer to the collateral source rule, he effectively argues the trial court violated the rule by allowing evidence that Medicare would pay at least a portion of his future medical expenses, which supposedly encouraged the jury to reduce his overall award of future medical expenses.

5

"A trial court's evidentiary ruling is reviewed for abuse of discretion. [Citations.] A trial court abuses its discretion if its ruling exceeds ' " 'the bounds of reason, all of the circumstances before it being considered.' " ' [Citation.] ' " 'A decision will not be reversed merely because reasonable people might disagree.' " ' " (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1188–1189; see *Lurner v. American Golf Corp.* (2023) 97 Cal.App.5th 121, 138 ["An abuse of discretion occurs only if ' "the trial court's decision exceeds the bounds of reason and results in a miscarriage of justice." ' "].)

We have considerable doubts that Audish preserved his challenge to the trial court's evidentiary rulings, as he has failed to include his motion in limine in the record and he asserted only relevance objections—not objections for alleged violations of the collateral source doctrine—to some (albeit not all) of the questions the defense posed to Feerick. However, assuming without deciding that Audish has preserved his challenge for our consideration, we conclude the trial court did not violate the collateral source rule, or otherwise abuse its discretion, in allowing Feerick's brief testimony about Medicare.

"The collateral source rule states that 'if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.' [Citation.] Put another way, 'Payments made to or benefits conferred on the injured party from other sources [i.e., those unconnected to the defendant] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.' [Citation.] The rule thus dictates that an injured plaintiff may recover from the tortfeasor money an insurer has paid to

6

medical providers on his or her behalf." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 551 (*Howell*).)

In *Howell*, the Supreme Court considered the issue of whether a tort plaintiff is entitled to recover from a tortfeasor-defendant, as damages for *past* medical expenses, the full and undiscounted amount the plaintiff's health care provider *billed* for the medical services it rendered to the plaintiff or, alternatively, whether recovery must be limited to the discounted rate the health care provider *accepted* as payment for the medical services it rendered pursuant to a negotiated agreement with the plaintiff's insurer. (*Howell, supra*, 52 Cal.4th at p. 548.) The *Howell* court concluded a tort plaintiff is only permitted to recover the discounted rate that the health care provider accepted as payment, given that the plaintiff did not suffer economic loss in the full amount charged by the health care provider. (*Id.* at pp. 563–564.)

The *Howell* court concluded this limitation on recovery did not violate the collateral source rule; instead, it found the rule was inapplicable. As the court explained, the collateral source rule "has no bearing on amounts that were included in a provider's bill but for which the plaintiff never incurred liability because the provider, by prior agreement, accepted a lesser amount as full payment. Such sums are not damages the plaintiff would otherwise have collected from the defendant. They are neither paid to the providers on the plaintiff's behalf nor paid to the plaintiff in indemnity of his or her expenses. Because they do not represent an economic loss for the plaintiff, they are not recoverable in the first instance. The collateral source rule ... does not expand the scope of economic damages to include expenses the plaintiff never incurred." (*Howell, supra*, 52 Cal.4th at pp. 548–549.)

In *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308 (*Corenbaum*), the Court of Appeal considered an issue left open by *Howell*—that is, whether

the full amount billed by a medical provider for past medical services is relevant to the calculation of a tort plaintiff's *future* medical expenses. Relying on *Howell*, the *Corenbaum* court concluded the full amount charged by a medical provider for past medical services "is not an accurate measure of the value of medical services," and it is therefore irrelevant to the reasonable value of either past *or* future medical services. (*Corenbaum*, at pp. 1330, 1328–1331.) Further, the court ruled that, "[b]ecause the full amount billed for past medical services provided to plaintiffs is not relevant to the value of those services, ... the full amount billed for those past medical services can provide no reasonable basis for an expert opinion on the value of future medical services." (*Id.* at p. 1331.) Thus, the *Corenbaum* court determined that the trial court abused its discretion by admitting evidence of the full amounts that a tort plaintiff's medical providers charged for past medical services. (*Id.* at pp. 1333–1334; see also *Pebley v. Santa Clara Organics, LLC* (2018) 22 Cal.App.5th 1266, 1269 ["The amount of the 'full bill' for past medical services is not relevant to prove past or future medical expenses"].)

We need not go so far as the *Corenbaum* court in order to decide the present case. However, we note that it—together with the *Howell* decision—lends support to our conclusion that, at the very least, the trial court did not abuse its discretion by admitting the limited evidence at issue about Audish's future eligibility for Medicare and the expected amounts Medicare might pay for Audish's recommended future medical services. Indeed, multiple courts have concluded, under similar circumstances, that it is permissible—or even necessary—for a trial court to admit evidence concerning a tort plaintiff's future eligibility for health insurance and the anticipated amounts the insurer would be expected to pay for the patient's future medical needs, evidence that is relevant to the reasonable value of future medical care.

In *Cuevas v. Contra Costa County* (2017) 11 Cal.App.5th 163 (*Cuevas*), for example, a plaintiff brought a malpractice action against the employer of a physician who caused the plaintiff to suffer brain damage. In the trial court, the parties relied on competing life-care plans to prove the plaintiff's future medical costs; the plaintiff's plan used undiscounted medical expenses, while the defendant's plan incorporated the anticipated discounted rates that would be accepted as payment should the plaintiff maintain coverage under Medi-Cal or obtain coverage under the federal Patient Protection and Affordable Care Act (ACA). (*Id.* at p. 167.) Relying on the collateral source rule, the trial court precluded the defendant from introducing evidence of Medi-Cal or ACA insurance benefits. (*Id.* at p. 169.) The Court of Appeal determined this was error. Referencing the *Howell* and *Corenbaum* decisions, the *Cuevas* court concluded that "the collateral source rule is not violated when a defendant is allowed to offer evidence of the market value of future medical benefits." (*Cuevas*, at p. 180; see also *id.* at pp. 181–182 ["the trial court's decision to exclude evidence of future insurance benefits that might be available under the ACA ... was an abuse of discretion"].)

In *Stokes v. Muschinske* (2019) 34 Cal.App.5th 45 (*Stokes*), a vehicle collision case, the trial court allowed the defendant-tortfeasor to make various references to the plaintiff's past medical insurer (Kaiser) and his future eligibility for Medicare and Social Security, including during the cross-examination of plaintiff's life-care planner. (*Id.* at pp. 55, 57.) On appeal, the plaintiff argued the "reference[s] to these entities led the jury to infer that he either had received collateral payments in the past or would receive collateral payments in the future, thereby prompting the jury to reduce his damages accordingly." (*Ibid.*) The *Stokes* court found no reversible error. It determined that most of the references to Kaiser and Medicare "were helpful

9

and even necessary to the jury's understanding" of the plaintiff's past treatment and the calculation of future reasonable medical expenses. (*Id.* at p. 58.) Thus, it concluded the trial court did not "abuse[] its discretion in admitting these references to assist the jury's understanding of the facts." (*Ibid.*) Further, to the extent "[a] few references arguably ... approach[ed] the line between permissible background information and reference to collateral sources," the *Stokes* court determined there was no prejudice warranting reversal. (*Ibid.*) In particular, it reasoned that the plaintiff did not "point to any evidence of deductions for *specific* future Medicare payments, and nothing suggest[ed] the jury subtracted unidentified future Medicare coverage in assessing future medical expenses." (*Id.* at p. 59, italics added.)

Consistent with the *Cuevas* and *Stokes* decisions, we conclude the trial court in the present case acted well within the bounds of its discretion when it permitted the defense to question Audish's life-care planner briefly about his future eligibility for Medicare and the anticipated costs of his recommended medical treatments if he were to obtain Medicare coverage. These evidentiary rulings did not violate the collateral source rule or amount to an abuse of discretion. Further, insofar as there was any error at all, the error was harmless. Like the plaintiff in *Stokes*, Audish has not identified any deductions for *specific* Medicare payments, nor has he demonstrated that the jury reduced his award for future medical expenses to reflect the future Medicare payments that might ultimately be made on his behalf. Thus, Audish has not carried his burden of establishing that the trial court's evidentiary rulings constituted reversible error.

B. *The Award of Zero Future Non-Economic Damages Was Proper*

Next, Audish argues the verdict was inadequate as a matter of law because the jury did not award him damages for future non-economic losses,

10

even though it awarded him $32,790.56 in damages for future medical expenses. We reject Audish's claim that the verdict was inadequate.

As a preliminary matter, Audish has forfeited his challenge to the future non-economic damages award by failing to identify any of the facts or evidence pertinent to such damages in his opening brief. The statement of facts in the opening brief is a meager three sentences in length and two of those sentences concern the automobile accident itself, not its consequences. The statement of facts does not cite the appellate record, nor does it discuss any evidence pertaining to future medical damages or non-economic damages. The portion of the opening brief attacking the future non-economic damages award does not remedy this deficiency. In a single sentence, it identifies the sizes of the future medical expense award ($32,790.56) and the future non-economic damages award ($0), but it omits any analysis of the facts or evidence pertinent to these awards.

" 'To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 (*Champir*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*United Grand*) [" 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "]; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 [" 'Any

statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record.*'"].) Audish has forfeited his challenge to the future non-economic damages award by failing to discuss—with proper record citations—any facts or evidence relating to the award or his claimed future non-economic damages in his opening brief.

Even if we were to consider the challenge to the future non-economic damages award, Audish has not established reversible error. The measure of damages in a tort action "is the amount which will compensate for all the detriment proximately caused" by the defendant. (Civ. Code, § 3333.) Economic damages are " 'objectively verifiable monetary losses including medical expenses, loss of earnings, ... loss of employment and loss of business or employment opportunities.' " (*DaFonte v. Up–Right, Inc.* (1992) 2 Cal.4th 593, 600.) " 'Non-economic' damages are such 'subjective, non-monetary losses [as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' " (*Ibid*.) "To recover future damages, a plaintiff must prove that his or her detriment is reasonably certain to result in the future." (*Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 460.)

In some cases, " 'a judgment for no more than the actual medical expenses occasioned by [a] tort [is] inadequate,' " where " 'the right to recover [is] established and ... there [is] also proof that the medical expenses were incurred because of defendant's negligent act.' " (*Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 937; see *Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893 ["awards which fail to compensate for pain and suffering have been held inadequate as a matter of law"].) However, "an award that does not account for pain and suffering is 'not necessarily

inadequate as a matter of law' [citation], and ... '[e]very case depends upon the facts involved.' " (*Dodson*, at p. 936.) "An award for the exact amount of, or even less than, the medical expenses is not necessarily inadequate as a matter of law, because in the majority of cases there is conflict on a variety of factual issues—whether plaintiff received any substantial injury or suffered any substantial pain, or whether the medical treatment was actually given or given as a result of the injuries, or reasonable or necessary." (*Haskins v. Holmes* (1967) 252 Cal.App.2d 580, 586.)

" 'The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently, as in this case, see the injury and the impairment that has resulted therefrom. As a result, all presumptions are in favor of the decision of the trial court.' " (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 299; see also *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 338 [non-economic "injuries are subjective, and the determination of the amount of damages by the trier of fact is equally subjective. ... [T]he determination is committed to the discretion of the trier of fact.' "].) Moreover, to the extent Audish attacks the trial court's denial of his motion for a partial new trial based on his claim that the award of zero future non-economic damages was contrary to law, we must affirm the trial court's denial order "unless the record reveals a manifest and unmistakable abuse of discretion." (*Phipps,* at p. 338.)[3]

The record discloses no such abuse of discretion. There was evidence that Audish suffered from anxiety and depression before the automobile

_____

[3] It is not always clear from Audish's briefs whether he is challenging the jury's award of zero future non-economic damages or the court's denial of his motion for a new trial, which attacked the award of zero future non-economic damages. In either event, the outcome is the same—affirmance.

13

collision and, furthermore, he experienced an unrelated concussion a mere two months before the collision. Several witnesses stated that, in September 2017, Audish lost consciousness for unknown reasons and struck his head on a piece of furniture. After this incident, he suffered from fatigue, light sensitivity, lack of appetite, loss of balance, mood instability, memory loss, headaches, and nausea, and he was ordered to refrain from driving and take time off work. From this evidence, the jury rationally could find that Audish did not prove—with reasonable certainty—that any future pain and suffering he might endure would be the result of the automobile collision, rather than the previous concussion or his preexisting mental health conditions. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1416 ["The evidence of [the plaintiff's] preexisting conditions and other medical conditions unrelated to the collision, if credited by the jury, tends to show that the majority of her past and future pain and suffering is unrelated to the collision."].)

Moreover, a defense witness and neuropsychologist who interviewed Audish testified that he performed extremely poorly on neurophysiological assessments that individuals with significant neurological or psychiatric problems perform perfectly. The neuropsychologist opined that Audish likely underperformed on the assessments intentionally and tried to embellish his cognitive symptoms. This, in turn, led the neuropsychologist to conclude there was no reliable indication Audish currently suffers from neurocognitive deficits. Further, he testified that, insofar as Audish has such deficits, it would be "difficult to distinguish" whether they resulted from the September 2017 concussion or the November 2017 concussion. In light of this evidence, the jury could reasonably doubt whether Audish presently suffers from significant ongoing cognitive difficulties and, even if he does, the extent to which he will experience future pain and suffering arising from those

14

difficulties. (*Miller v. San Diego Gas & Electric Co.* (1963) 212 Cal.App.2d 555, 560 [verdict awarding medical expenses and denying non-economic damages was proper where "there was a substantial conflict as to whether plaintiff received any substantial injury and as to whether bills incurred for medical examinations and treatment were rendered necessary by reason of the [defendant's negligence] or whether they were necessary at all"].)

Finally, there was no evidence indicating that Audish needs to undergo especially painful or arduous surgeries or medical interventions in the future. A physician who treated Audish after his accident advised him, "with these kinds of situations, sometimes it just takes time to heal." One of Audish's witnesses, a clinical neuropsychologist, testified that his recommended treatment plan consisted only of therapy, medication, and an outpatient cognitive remediation program. Further, according to Audish himself, several of his physical and cognitive conditions have improved since the automobile incident, including his depression, the frequency of his headaches, and his sleep patterns. The evidence of Audish's improving physical and cognitive conditions, and the absence of evidence that he will need to endure especially physically painful or intensive medical treatments in the future, supports the jury's decision not to award future non-economic damages.

For all these reasons, we reject Audish's claim that the jury erred by declining to award him damages for future non-economic losses, as well as his suggestion that the court erred by denying his motion for a partial new trial.

C. *Audish Has Not Established an Impermissible Compromise Verdict*

Audish also asserts that the judgment must be reversed and the matter must be remanded for a new trial because the verdict was an impermissible compromise verdict. He claims it was "undisputed that [he] suffered lost earnings" due to the automobile accident, so the verdict—which found Macias

15

liable, but awarded Audish no damages for lost earnings—must have been the product of a compromise between jurors who believed that Macias was liable and should be held responsible for Audish's lost earnings, on the one hand, and jurors who believed Macias was not liable, on the other hand. Once more, Audish has not established reversible error.

Typically, the concept of a compromise verdict arises when a jury issues a damages award that is inadequate as a matter of law (see Code Civ. Proc., § 657, subd. 5), and the court must then decide whether to order a limited new trial on the issue of damages or, alternatively, whether to order a new trial for both liability and damages. "A new trial limited to determining the amount of compensatory damages ordinarily is proper unless the record indicates that the finding of liability resulted from a compromise verdict, in which case the new trial should encompass both liability and damages." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 697.)

> Witkin describes a compromise verdict in the following terms:

> Verdicts are sometimes rendered in personal injury or death actions that, in view of the evidence of injuries, suffering, and medical and other expenses, are clearly inadequate. Common experience suggests that these are the result of compromise, some jurors believing that the evidence fails to establish liability, but yielding to the extent of agreement on a small recovery. It would be unfair to the defendant to ignore this unmistakable evidence of compromise and to accept the verdict for the plaintiff at face value as a determination of liability. Accordingly, it is well settled that the error calls for a general new trial, and a limited order is an abuse of discretion.

(8 Witkin, Cal. Procedure (6th ed. 2024) Attack on Judgment in Trial Court, § 109.)

Common indicators of a compromise verdict are "a patently inadequate damage award, close or difficult issues of liability, and a non-unanimous verdict." (*Ryan v. Crown Castle NG Networks, Inc.* (2016) 6 Cal.App.5th 775,

16

791; see also *Lauren H. v. Kannappan* (2002) 96 Cal.App.4th 834, 841 ["[I]ndicators of a compromise verdict are (1) a close verdict; (2) jury requests for read back; (3) jury indecision whether the plaintiff should recover a certain amount or nothing; (4) a subsequent jury election to straddle and award a compromise recovery in a lesser amount than that to which plaintiff would be entitled if plaintiff prevailed; and (5) a short trial."].)

Audish has not provided us with any cogent and reasoned argument, coupled with supporting legal authorities, that a compromise verdict is inherently problematic or that such a verdict, on its own, justifies the grant of a new trial. For that reason alone, we are inclined to conclude that Audish has forfeited his compromise verdict argument. (*Champir, supra*, 66 Cal.App.5th at p. 597; *United Grand, supra*, 36 Cal.App.5th at p. 146.)

In any event, assuming without deciding that a compromise verdict is intrinsically problematic, we reject Audish's claim that the present record reveals a compromise verdict. Preliminarily, the damages award was not patently inadequate simply because it omitted an award for lost wages. At trial, Audish and his vocational rehabilitation consultant testified that he had a preexisting plan to move out of state and obtain new employment in December 2017—just weeks after the collision took place. In accordance with this plan, Audish obtained employment as a senior laboratory scientist after the accident. He continued his employment with his prior employer until after he started his new job, and he maintained steady employment—first as a senior laboratory scientist and then as a field engineer—until trial. Further, insofar as Audish took specific days off work after the accident, the trial court correctly observed that the evidence "was not clear as to why Mr. Audish took time off work [or] that it was all related to the accident." On this record, we cannot say that the damages award was patently inadequate.

17

Moreover, Macias' liability did not present an especially difficult or close jury issue. At trial, Macias admitted he knowingly made an illegal turn onto the street on which Audish was driving, an admission that was corroborated by the testimony of the law enforcement officer who responded to the collision. The jury's negligence findings—although not unanimous—also indicate the jury did not have a particularly hard time finding Macias was negligent. By an overwhelming vote of 11–1, the jury found Macias was negligent in the operation of his vehicle and, by a comfortable vote of 9–3, it found his negligence was a substantial factor in harming Audish. Further, Audish does not claim that the deliberation process was particularly lengthy, that the court received juror notes or readback requests during the deliberations, or that there is any other reason to suspect the jury might have struggled to decide Macias' liability. Given all these factors, Audish has not established that the verdict was a compromise verdict.

IV

DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


DO, J.


CASTILLO, J.

18

Filed 6/6/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID AUDISH, | D081689 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00017566-CU-PA-CTL) |
| DAVID MACIAS et al., | |
| Defendants and Respondents. | |


THE COURT:

The opinion in this case filed May 21, 2024 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties